PEOPLE v BARNES

OPINION OF THE COURT

1. BURGLARY—EVIDENCE—FINGERPRINTS—QUESTION FOR JURY.

A single fingerprint on a fragment of glass from a door or window
of burglarized premises was sufficient to support a jury's ver-
dict finding defendant guilty of breaking and entering; the
question of what point in time the print was made on the glass,
whether it was on the inside or the outside of the pane, its
clarity, and its reliability went to the weight of the evidence
and were questions for the jury.

DISSENT BY J. H. GILLIS, J.

2. CRIMINAL LAW—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

*Circumstantial evidence, to support a conviction, must exclude
every reasonable hypothesis consistent with innocence.*

3. BURGLARY—EVIDENCE—FINGERPRINTS—SUFFICIENCY.

*Evidence that a fingerprint obtained from a glass fragment from
a public door broken at a service station during a burglary
matched the defendant's fingerprint was totally inadequate to
support a conviction of breaking and entering because the
existence of this fingerprint shows only that the defendant at
some time touched the glass; nothing shows that the print
could only have been impressed at the time the crime was
committed.*

4. CRIMINAL LAW—PROSECUTOR'S REMARKS—FAILURE TO TESTIFY—
BURDEN OF PROOF.

*A prosecutor's comment which indicated the lack of any testi-*

REFERENCES FOR POINTS IN HEADNOTES
[1] 13 Am Jur 2d, Burglary §§ 50, 51, 66.
[1, 3] Fingerprints, palm prints, or bare footprints as evidence. 28
ALR2d 1115.
[2] 29 Am Jur 2d, Evidence § 266.
30 Am Jur 2d, Evidence §§ 1091, 1125, 1126.
[3] 30 Am Jur 2d, Evidence § 1144.
[4] 63 Am Jur 2d, Prosecuting Attorneys § 27.

mony about the defendant's innocent presence at the scene of the crime effectively shifted the burden of proof, in the average layman's mind, to the defendant; since the prosecutor, not the defendant, has the burden by his proofs to exclude hypotheses consistent with innocence, and since the prosecutor may not comment on defendant's failure to testify, the prosecutor's comment was prejudicial and requires a reversal.

Appeal from Recorder's Court of Detroit, Samuel Brezner, J. Submitted Division 1 January 9, 1974, at Detroit. (Docket No. 16038.) Decided March 5, 1974.

Gordon J. Barnes was convicted of breaking and entering a business place with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas A. Ziolkowski,* Assistant Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and GILLIS and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from a conviction of breaking and entering a business place with intent to commit larceny. MCLA 750.110; MSA 28.305.

We have reviewed the assignments of error and conclude that only one merits decisional discus-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

sion. It is the question of the sufficiency of evidence of guilt established by a single fingerprint on a fragment of glass from a door or window of the burglarized premises. The fragment was one of many that was found inside and outside the building. It is concluded that the police did not collect, preserve, and offer for admission of all the fragments in and about the scene.

The defense argues that this failure amounts to a breach of duty to furnish all evidence of guilt or innocence. It is further argued that this fact coupled with the prosecutor's argument that the evidence of the defendant's fingerprint on the window fragment was uncontradicted and unexplained deprived the defendant of any defense. This because defendant chose not to take the witness stand. Thus appellate counsel argues with great vigor and admirable candor that defendant was placed in the position of either exposing a record of prior offenses by taking the stand, or being unable to explain the inculpating print. We can appreciate the difficulty of the choice. About all we can say is *"C'est la guerre".* It was the defendant's choice and he made it, wisely or unwisely. The question of what point in time the print was made on the glass, whether it was on the inside or the outside of the pane, its clarity, reliability, and other questions of similar import went to the weight of the evidence. These are jury questions and not for us to disturb unless we can say the evidence was totally inadequate to support the verdict. This we cannot do as we view the record.

Perforce, we affirm.

McGREGOR, P. J., concurred.

J. H. GILLIS, J. *(dissenting).* Methinks my

learned colleagues have fallen into one of the
fallacies of logic: *"Post hoc, ergo propter hoc"*[1]

A jury convicted defendant after a trial in which
the total evidence adduced was circumstantial.

On October 19, 1971, the Allied Towing Service
was broken into. Some person or persons appar-
ently obtained entry by breaking the glass portion
of the front door. Allied's operation is described in
the cross-examination of the vice-president and
owner of the building, Mr. Eugene Bertani:

"*Q.* Mr. Bertani, this particular door that was broken
is the service door, is it not?

"*A.* Right.

"*Q.* Where people come in during the business hours,
and out that door?

"*A.* Yes, it is a service door in the garage.

"*Q.* The garage. Now, do you also sell gasoline there,
gas and oil?

"*A.* Yes.

"*Q.* It is a gas station as well, isn't it?

"*A.* Yes.

"*Q.* Also you do tire repairs, at that—through that
service entrance?

"*A.* Yes.

"*Q.* All right. So people use that entrance all the time
while the place is open for business?

"*A.* Yes.

"*Q.* Now, during the daytime, is that door open or is
it closed? I mean without being locked. In other words,
to get into the service department, do you have to turn
a knob to get into the service department and open this
particular door?

"*A.* Yes, you have to turn the knob and open the
door.

"*Q.* And the same coming out?

"*A.* Yes."

---

[1] After this, therefore because of this. Definition of fallacy in logic.
*Familiar Quotations,* John Bartlett (13th Centennial Edition), p
1010b.

An Allied employee opened the business between 6:30 and 7 a.m. on October 20, 1971 and discovered "the window was busted completely out". He found glass on both the inside and outside of the building. Police were called and fragments of glass were collected, which were delivered to the scientific lab of the Detroit Police Department. A legible print was obtained from one of these glass fragments which matched defendant's eighth finger (which the expert described as the middle finger of the left hand). This fingerprint evidence, without more, convicted defendant, who exercised his constitutional right not to testify.[2]

By way of emphasis we point out the following. No testimony placed the defendant anywhere near the scene on the evening in question. We do not know if the defendant entered the Allied station for business purposes on the business day prior to the breaking and entering. We do not know when the glass in question was last cleaned. No testimony indicates defendant's employment, or the

---

[2] Appellate counsel was not trial counsel and we do not know the reason that the defendant failed to take the stand. In *Griffin v California,* 380 US 609, 613–614; 85 S Ct 1229, 1232; 14 L Ed 2d 106, 109 (1965), the Court quoted with approval from *Wilson v United States,* 149 US 60; 13 S Ct 765; 37 L Ed 650 (1893): " 'the act was framed with a due regard also to those who might prefer to rely upon the presumption of innocence which the law gives to every one, and not wish to be witnesses. It is not every one who can safely venture on the witness stand though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. It is not every one, however honest, who would, therefore, willingly be placed on the witness stand. The statute, in tenderness to the weakness of those who from the causes mentioned might refuse to ask to be a witness, particularly when they may have been in some degree compromised by their association with others, declares that the failure of the defendant in a criminal action to request to be a witness shall not create any presumption against him.'

"If the words 'Fifth Amendment' are substituted for 'act' and for 'statute' the spirit of the Self-Incrimination Clause is reflected."

neighborhood in which he resides. Finally, no admission or confession connects defendant to the crime.

In *People v Ware*, 12 Mich App 512, 515; 163 NW2d 250, 252 (1968), the Court held:

" 'To warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the place where the crime was committed under such circumstances that *they could only have been impressed at the time when the crime was committed.*' " 28 ALR2d 1154. (Emphasis supplied.)

To support a conviction, circumstantial evidence must exclude every reasonable hypothesis consistent with innocence. *People v Sessions*, 58 Mich 594; 26 NW 291 (1886). The existence of this fingerprint shows only that the defendant at some time touched the glass. The door was accessible to and used by the public. Nothing shows that the print could only have been impressed at the time the crime was committed. I can only conclude that the evidence was totally inadequate to support the verdict.

Additionally, another compelling reason requires reversal of this conviction. The prosecutor argued:

"[T]his was a public establishment. The door that was broken was a door used by the public. It was a service door. Anyone could have used that door and put their fingerprints on that window.

"But you also realize this defendant, Mr. Barnes, *never worked there, and there is no testimony on the record that he walked by and accidentally put his fingers on there, or anything like that.*" (Emphasis supplied.)

The prosecutor's comment may or may not be true; however, the record is silent as to defend-

ant's employment. Further, the prosecutor's comment, indicating *lack* of any testimony about defendant's innocent presence, invites error. This statement effectively shifts the burden of proof, in the average layman's mind, to the defendant. Certainly, the prosecutor, not the defendant, had the burden *by his proofs* to exclude hypotheses consistent with innocence. Finally, since an accidental touching of the window is peculiarly within defendant's knowledge, the prosecutor in effect told the jury: If this man is innocent, why didn't he take the stand and advise us? The prosecutor may not comment on defendant's failure to testify. *Griffin, supra.*

I would, therefore, reverse this conviction without a new trial on the basis that there was insufficient evidence to go to the jury. The prosecutor's comments and the arguments to the jury also mandate a reversal.