PEOPLE v FULLER

Docket No. 54738. Argued September 10, 1974 (Calendar No. 3).—
Decided December 18, 1975. Rehearing denied 395 Mich 924.

Cornell Fuller was convicted by a jury in Recorder's Court of
Detroit, Thomas L. Poindexter, J., of first-degree felony murder.
The prosecution contended that he aided and abetted, by acting
as a lookout, in an arson which resulted in the death of two
girls. The Court of Appeals, Quinn, P. J., and V. J. Brennan and
O'Hara, JJ., affirmed (Docket No. 11308). Defendant appeals.
*Held:*

1. A jury may believe or disbelieve, in whole or in part, any
of the evidence presented.

2. Evidence was presented which, if believed by the jury,
showed that the defendant acted as a lookout for the arsonist.

3. The jury determined that the prosecution had negated
every reasonable theory consistent with the defendant's inno-
cence of the crime charged.

Conviction affirmed.

T. G. Kavanagh, C. J., was joined by Levin, J., in voting to
reverse the conviction and discharge the defendant. The record
does not contain sufficient evidence to support a conviction of
felony murder. There was inadequate proof of defendant's
intention to act in concert with the principal to set the fire.
The fact that the defendant was seen with the arsonist, and
that he was seen standing by the alley at the back of the house
looking around, does not establish that he was acting as a
lookout, nor is a witness's speculation as to what defendant was
doing sufficient to allow a conclusion that he was acting as a
lookout.

44 Mich App 297; 205 NW2d 287 (1973) affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence § 1080 *et seq.*
[2, 4–6, 8, 9] 21 Am Jur 2d, Criminal Law § 115 *et seq.*
[3, 6, 7] 30 Am Jur 2d, Evidence § 1091.

OPINION OF THE COURT

1. CRIMINAL LAW—TRIAL—EVIDENCE—TRIER OF FACT.

The trier of fact in a criminal case, particularly the jury, has the right to believe or disbelieve, in whole or in part, any of the evidence presented.

2. CRIMINAL LAW—AIDING AND ABETTING—VERDICT.

A jury verdict that a defendant was guilty of aiding and abetting a felony murder should not be disturbed where evidence of defendant's activities was presented which was consonant with a theory of active participation in the crime, if the jury believed the evidence.

3. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—TRIER OF FACT.

It is for the trier of fact to determine if the prosecution has, by the circumstantial evidence presented, negated every reasonable theory consistent with the defendant's innocence of the crime charged.

DISSENTING OPINION

T. G. KAVANAGH, C. J., and LEVIN, J.

4. CRIMINAL LAW—AIDING AND ABETTING—EVIDENCE—SUFFICIENCY.

*The fact that defendant and an arsonist were seen together, defendant standing by a gate at an alley at the rear of a house, looking around, while the arsonist set fire to the back porch of a house, does not establish that defendant was a lookout aiding and abetting the arson.*

5. CRIMINAL LAW—AIDING AND ABETTING—EVIDENCE—SUFFICIENCY.

*Speculation by a witness that he guessed that defendant, near the scene of an arson, was acting as a lookout for the arsonist, was not sufficient to allow the conclusion to be drawn that defendant was acting as a lookout.*

6. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—INFERENCES.

*An inference may be drawn from circumstantial evidence in a criminal case only if it follows with impelling certainty from that evidence.*

7. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—INFERENCES.

*Allowing a trier of fact to draw an inference in a criminal case only if the inference follows with impelling certainty enforces the requirement that, where the people's case is based on circumstantial evidence, the prosecution must negate every reasonable theory consistent with the defendant's innocence of the crime charged.*

8. CRIMINAL LAW—AIDING AND ABETTING—PRESENCE—SUFFICIENCY.
   *Mere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor or a principal in the second degree nor is mere mental approval sufficient, nor passive acquiescence or consent.*

9. CRIMINAL LAW—AIDING AND ABETTING—EVIDENCE—SUFFICIENCY.
   *It is not reasonable to conclude that defendant agreed to act as a lookout for an arsonist or that he did in fact assist the arsonist in perpetrating the crime from the sole fact that the defendant may have been in a position to observe what the arsonist was doing or to warn him of danger.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office,* by *Dennis H. Benson,* Assistant Defender, for defendant.

WILLIAMS, J. This Court has steadfastly supported the right of the trier of fact, particularly the jury, to believe, or disbelieve, in whole or in part, any of the evidence presented. The instant case involves this doctrine.

As my brother the Chief Justice in his opinion observes, "There was uncontradicted testimony that 16-year-old Zerious Meadows started the fire by throwing a Molotov cocktail, and by striking a match." However, as he correctly notes, the question before us is not whether defendant Cornell "Fuller planned the arson, or that he lit the fire, but rather that he acted as a lookout for Meadows by standing by the back gate of the yard and looking up and down the alley".

In our opinion, evidence was presented which, if believed by the jury, would show just that. This is

not a case of "mere presence at the scene", for, if the jury believed it, defendant's activities were consonant with a theory of active participation in the crime.

The Chief Justice in his opinion carefully lays out the testimony of the important witnesses. There is no need to repeat this material in this opinion.

The jury could connect Fuller with Meadows who perpetrated the arson, because, as the Chief Justice summarized,

"One witness testified she saw five or six boys huddled together on the sidewalk in front of the Turner home before it burned. She identified one of the boys as Fuller. She said she saw him go through the gate to the back yard of the Turner home. She saw another of the boys in front throw something at the house and the house caught fire. She identified one of the other boys as a boy named 'Jefferey'."

This boy was Jefferey Coleman, whose testimony, well set out by the Chief Justice, described Fuller's role in the crime. Even if we eliminate Jefferey Coleman's speculation that "I guess he [Fuller] was watching out for Zerious", he still testified that defendant was looking back and forth "to Jefferson" and "back towards Kercheval" several times and that after the fire started, Fuller and Meadows together took off and ran toward Kercheval.

Another witness, Gary Martin, in the words of the Chief Justice "testified that he saw Cornell Fuller, Zerious Meadows and four others walking together in the alley between Fairview and LeMay going towards Jefferson. He said he next saw Fuller and Meadows run through a yard and then run down to Kercheval through the alley."

It is for the trier of fact to determine if the prosecution has "negate[d] every reasonable theory consistent with the defendant's innocence of the crime charged". It was so determined in this case.

Conviction affirmed.

COLEMAN and FITZGERALD, JJ., concurred with WILLIAMS, J.

LINDEMER and RYAN, JJ., took no part in the decision of this case.

T. G. KAVANAGH, C. J. *(dissenting)*. Cornell Fuller was convicted of first-degree felony murder, MCLA 750.316; MSA 28.548, by a jury.

Because we are satisfied after a thorough review of the record that there was insufficient evidence to support conviction, we set this verdict aside.

On May 18, 1970, two young girls lost their lives in a fire asserted to be caused by arson. There was uncontradicted testimony that 16-year-old Zerious Meadows started the fire by throwing a Molotov cocktail, and by striking a match. The prosecution did not allege that Fuller planned the arson, or that he lit the fire, but rather that he acted as a lookout for Meadows by standing by the back gate of the yard and looking up and down the alley.

One witness testified she saw five or six boys huddled together on the sidewalk in front of the Turner home before it burned. She identified one of the boys as Fuller. She said she saw him go through the gate to the back yard of the Turner home. She saw another of the boys in front throw something at the house and the house caught fire. She identified one of the other boys as a boy named "Jefferey". She testified she did not see anything unusual at the rear of the Turner home because she could not see that far.

Fourteen-year-old Jefferey Coleman testified that he saw Zerious Meadows, on the back porch with a Coca Cola bottle in his hand, light a rag in the bottle and throw it against the porch. He said he saw Cornell Fuller "standing by the gate" in the back yard. The following colloquy then occurred:

"*Q.* Now after he [Meadows] had struck the match and started the second fire what happened then?

"*A.* Well, he had jumped off the porch and then they ran down the alley towards Kercheval.

"*Q.* When you say they ran down the alley, who ran down the alley?

"*A.* Zerious and Cornell.

"*Q.* Towards Kercheval.

"*A.* Yes, sir.

"*Q.* During the time that Zerious Meadows was throwing the bottle against the side of the house or against the side of the porch and lighting the match which set—started the second fire did you see what Cornell Fuller was doing?

"*A.* He was still standing by the gate, looking around.

"*Q.* When you say he was looking around what, exactly, was he doing?

"*A.* I guess he was watching out for Zerious—he had looked to Jefferson and he looked back towards Kercheval.

"*Q.* He looked towards Jefferson and looked back towards Kercheval?

"*A.* Yes, sir.

"*Q.* Did he do that once or more than once?

"*A.* He did it more than once.

"*Q.* He did it more than once—how many times—

"*The Court:* Was this the alley gate or the gate toward the front of the house?

"*A.* It was the alley gate.

"*Q.* How many times would you say Cornell Fuller looked towards Jefferson and then looked back towards Kercheval?

"*A.* I wouldn't know.

"*Q.* But it was more than once; is that correct?

"*A.* Yes, sir.

"*Q.* Was it more than twice?

"*A.* Yes, sir.

"*Q.* Now, during the time that this was taking place, Jefferey, did you hear any words spoken between Zerious and Cornell?

"*A.* No.

"*Q.* Did you say anything to them?

"*A.* No.

"*Q.* Now, after—strike that, please—after the second fire began, you testified that Zerious and Cornell left the backyard; is that correct?

"*A.* Yes, sir.

"*Q.* Did they enter the alley?

"*A.* Yes, sir.

"*Q.* Did they enter the alley through the gate that Cornell Fuller was standing by?

"*A.* Yes, sir.

"*Q.* And then they started running; is that correct?

"*A.* Yes, sir.

"*Q.* Were they running together or separately, Jefferey?

"*A.* Together.

"*Q.* And they were running towards Kercheval; is that correct?

"*A.* Yes, sir."

Gary Martin testified that he saw Cornell Fuller, Zerious Meadows and four others walking together in the alley between Fairview and LeMay going towards Jefferson. He said he next saw Fuller and Meadows run through a yard and then run down to Kercheval through the alley.

The testimony summarized above was the entire evidence linking Cornell Fuller with the arson and resulting deaths. At the conclusion of the prosecution's case, Fuller's attorney moved for a directed

verdict of acquittal. The trial judge in denying the motion said:

"*The Court:* The question in this case is a close one. As I regard the testimony the defendant's complicity in the case depends almost completely on the fact that he was present at the scene of the crime and that he was seen going to it and seen running afterwards. There was very meagre evidence to call him a look-out in this particular case; however, the Court is of the impression that we do have a borderline prima facie case in this instance—a borderline prima facie case—and, accordingly, the court will reserve its ruling on the motion for a directed verdict. It seems to me that the testimony is the kind that would be—that there would be a high probability that the jury would return a verdict of not guilty in this case, but where there is a prima facie case the Court cannot speculate on it—on the jury's decision in the case and the Court will, however, reserve a ruling on the motion."

After the jury returned a guilty verdict, a motion to set aside that verdict as against the great weight of the evidence was denied.

The record does not contain sufficient evidence to support a conviction of felony murder against this defendant. In a prosecution for felony murder, the felony must be proven independently of the murder. *People v Allen,* 390 Mich 383; 212 NW2d 21 (1973). Arson is a specific intent crime, and proof of the corpus delicti requires the showing not only that the building was burned but that the fire was intentionally set. *Peterson v Oceana Circuit Judge,* 243 Mich 215; 219 NW 934 (1928). There was inadequate proof of Fuller's intention to act in concert with Zerious Meadows to set this fire.

The prosecution did not contend that Fuller assisted in planning this arson; they argued rather that he acted as a "lookout" for Meadows, *i.e.,* that

he was an "aider and abettor". The fact that Fuller and Meadows were seen together—that Fuller was seen by the alley "standing by the gate, looking around" does not establish his being a lookout for an arsonist.

Jefferey Coleman's *speculation* as to what Fuller was doing—"I guess he was watching out for Zerious—he had looked to Jefferson and he looked back towards Kercheval"—is not sufficient to allow a conclusion to be drawn that Fuller *was* acting as a lookout. In *People v Davenport,* 39 Mich App 252, 257–258; 197 NW2d 521 (1972), it was said:

> "It has been said that in a criminal case 'not only must each of the facts from which the inference is drawn be proved beyond any reasonable doubt, but the inference itself must be such as admits of no other rational conclusion'. *People v Sessions,* 58 Mich 594, 606 (1886) (per Sherwood, J). Accord: *Miller v State,* 250 Ind 338; 236 NE2d 173 (1968): 'An inference, to be valid, must be logical [citation omitted]. It must follow as an impelling certainty from the circumstantial evidence which mothers it, or it is not proper.' Similarly, see *State v Faircloth, supra* [181 Neb 333; 148 NW2d 187 (1967)].
>
> "Allowing a trier of fact to draw an inference in a criminal case only if the inference follows with 'impelling certainty' enforces the requirement that, where the people's case is based on circumstantial evidence, the prosecution must negate every reasonable theory consistent with the defendant's innocence of the crime charged."

There are simply too many inferences that would have to be drawn, one piled upon another, to justify conviction of this defendant. The prosecution has not negated "every reasonable theory consistent with the defendant's innocence of the crime charged". The due process clause "protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged". *In re Winship,* 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

Fuller's presence at or near the scene of this crime will not support a conclusion of his direct participation or of aiding and abetting.

" 'Mere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor or a principal in the second degree nor is mere mental approval sufficient, nor passive acquiescence or consent.' " *People v Burrel,* 253 Mich 321, 323; 235 NW 170 (1931).

In *Burrel,* defendant and one Bracken picked up a girlfriend of Bracken's in defendant's automobile. Defendant, as directed by Bracken, parked the car while Bracken had sexual intercourse with the underage girl in the back seat. Defendant sat in the front seat with his arms over the steering wheel and his head resting on his arms. Defendant was convicted of statutory rape as an aider and abettor.

That conviction was reversed because there was no evidence to show that defendant knew when he took Bracken and the girl into his car and before parking that Bracken intended statutory rape, and "[i]f it be inferred that, after stopping the car, he knew what his guests were doing in the back of the car, it makes no difference * * * ". *Id.*

So it is in the case at bar. There is no evidence that defendant knew that Meadows planned to set fire to the Turner house. There is no evidence that defendant agreed to assist Meadows in burning the house.

While defendant may have been in a position to

observe what Meadows was doing or to warn him of danger, from this fact alone it is not reasonable to conclude that he agreed to act as a lookout or that he did in fact assist Meadows in perpetrating the crime.

We would reverse the conviction and discharge the defendant.

LEVIN, J., concurred with T. G. KAVANAGH, C. J.