PEOPLE v JABLONSKI
PEOPLE v ALEMAN

1. Burglary—Breaking and Entering—Circumstantial Evidence
—Conclusions—Minimal Evidence.

Minimal circumstantial evidence is sufficient to sustain a conclusion by a trier of fact that a defendant entertained the intent to break and enter with intent to commit larceny.

2. Courts—Trial—Trier of Fact—Witnesses—Questioning Witnesses—Material Questions—Duty.

A trial court sitting as the trier of fact determines the credibility of witnesses, and has not only the right but the duty to ask material questions of witnesses to clarify matters before it.

3. Criminal Law—Evidence—Circumstantial Evidence—Prosecutors—Inferences—Facts—Reasonable Theories.

A prosecutor must prove the facts from which inferences of guilt are drawn beyond any reasonable doubt where guilt in a criminal matter is sought to be proved by circumstantial evidence, and it is for the trier of fact to determine whether the prosecutor had in fact negated every reasonable theory consistent with the defendant's innocence.

4. Criminal Law—Evidence—Possession—Tools—Proof of Use.

Weapons or tools found in an accused's possession at the time of his arrest may be introduced in evidence at his trial without proof that they were the very weapons or tools used by him in the crime with which he is charged, if the weapons or tools might have been the ones that were used.

Appeal from Wayne, James L. Ryan, J. Submit-

References for Points in Headnotes
[1] 13 Am Jur 2d, Burglary § 50.
[2] 76 Am Jur 2d, Trial § 1239.
 81 Am Jur 2d, Witnesses §§ 658, 660.
 Credibility of witness giving uncontradicted testimony as matter for court or jury. 62 ALR2d 1191.
[3] 29 Am Jur 2d, Evidence §§ 12, 148, 278.
[4] 29 Am Jur 2d, Evidence § 288.

ted March 8, 1976, at Detroit. (Docket Nos. 24182, 24233.) Decided July 20, 1976.

Walter A. Jablonski and Richard E. Aleman were convicted of attempted breaking and entering an occupied dwelling with intent to commit larceny. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Andrea W. Solak,* Assistant Prosecuting Attorney, for the people.

*Robert R. Mallory (Carl Ziemba,* of counsel), for defendant.

Before: Bashara, P. J., and V. J. Brennan and T. M. Burns, JJ.

V. J. Brennan, J. Defendants, Walter August Jablonski and Richard E. Aleman, were charged with the possession of burglar's tools, MCLA 750.116; MSA 28.311, and attempted breaking and entering of an occupied dwelling with intent to commit larceny, MCLA 750.92; MSA 28.287 and MCLA 750.110; MSA 28.305. Defendants were jointly bench tried in Wayne County Circuit Court. At the close of the prosecutor's proofs, the trial judge granted defendants' motion to dismiss the possession of burglar's tools charge. On March 20, 1975, both defendants were found guilty of the attempted breaking and entering charge and each received a prison sentence of not less than 24 nor more than 60 months. Defendants now appeal as a matter of right.

Frank Poljanac, who lived across the street from

the complainant, testified that on the night of January 23, 1975, he heard a door slam and went to the window. Looking outside, he saw someone on the side of complainant's house "trying the windows". He then noticed someone lying on a glider on the front porch of complainant's home bobbing his head up and down. Mr. Poljanac called the police. He lost sight of the man who had been "trying the windows" when the man went to the back of the house. He could not identify defendant Aleman as the man who had tried the windows. He did identify defendant Jablonski, however, as the man who had been on the glider on the front porch. He also testified that Jablonski was wearing a walkie talkie around his neck. Mr. Poljanac further testified that he later observed that the basement screen window at the rear of the house and the telephone wires had been cut. On cross examination Mr. Poljanac testified that the person he had seen was on the east side of complainant's house.

James Dzialak, a patrolman with the Hamtramck police department, testified that after receiving a radio call he and a fellow officer went to complainant's home. As they arrived at the front of the house, Dzialak spotted a man on the east side of the house running to the back yard and a man on the front porch lying on the glider. He then went to the front porch and ordered the man off the porch. That man, later identified as defendant Jablonski, was wearing gloves and had a walkie talkie hanging from his neck. After seizing a .38-caliber pistol with six live rounds from him and finding two nylon stockings in his back pocket, Mr. Dzialak arrested defendant Jablonski. When the officer entered complainant's home he found that the phone was dead.

Mr. Dzialak's partner, Gary Boike, testified that when the police car in which he was riding was approximately four houses from complainant's home, he observed two people on the porch of complainant's house. One of the men jumped off the porch and ran to the east side of the house. Officer Boike was not able to identify the one who had run, but he did observe that the man was wearing a blue nylon windbreaker. He radioed the backup police car located in the alley that someone in a blue jacket was running towards them. A few moments later he found that the backup officers had taken defendant Aleman into custody.

The backup police officer, Joseph Harjay, testified that he was in the alley behind complainant's home and observed defendant Aleman running towards him, and that he took him into custody. In Aleman's pockets he found a nylon stocking, rosebush cutters, a penlight flashlight, two skeleton keys and a pair of gloves. Aleman claimed that he had been jogging.

Defendant Aleman took the stand in his own behalf and testified that at about 11 p.m. on January 23, 1975, his brother's pickup truck, which he had been driving, stopped as he crossed Yemans. Using a penlight flashlight and shears he had taken from the glove compartment, he checked a fuse and discovered that the battery was dead. He started walking up Yemans toward the Florin Bar. Stepping behind a bush in front of the house, he stopped to urinate. The police then arrived. Aleman went toward the back of the house. He saw a police car in the rear, and squatted down. He heard the police say, "[t]here is two going over the fence", and he saw one and heard another go over the fence. One officer then saw him and told him to stand. In court, Aleman explained that he had never seen Jablonski before that night.

Defendant Jablonski also testified in his own behalf. He explained that the gun and walkie talkie had belonged to a friend who had recently died, and he was taking the items to bars in an attempt to sell them. As he left one bar, two or three men followed him, and he believed they planned to rip him off. He ran down Yemans and dashed up on the porch of a house and laid down on a glider to wait for them to pass. Soon the police arrived. No one else was on the porch, and he saw no one running in the area. The trial judge asked Jablonski whether he had any authority to sell the items which he claimed to have received from his dead friend. Jablonski answered in the negative.

On appeal each defendant brings two allegations of error. Defendant Jablonski contends that there was insufficient evidence to support his conviction for attempted breaking and entering an occupied dwelling with intent to commit larceny and that the trial judge committed reversible error by eliciting testimony from him that showed that he might be guilty of a criminal offense for which he had not been charged.

Defendant Jablonski contends that the prosecution failed to show either that he knew defendant Aleman or that he was acting in concert with him on the night in question, and that there was, therefore, insufficient evidence to support a conviction. The prosecution's case rested almost entirely on circumstantial evidence. The prosecutor argued that the fact that defendant was found on the front porch of a home in a quiet, residential area in Hamtramck, that he did not know the occupants of the home, that he was wearing gloves and had a walkie talkie hanging from his neck, that he had a .38-caliber pistol with six live rounds of

ammunition and two nylon stockings in his back pocket, and that he was seen lying on a glider on the front porch bobbing his head up and down at the same time that a man was seen trying the windows on the side of the house, constituted ample circumstantial evidence to convict. Defendant Jablonski's theory of the case was that he had acquired certain property from a friend who was deceased, that he had attempted to sell this personal property in a number of bars, that he had been followed from one bar by three men who he thought might rob him, that he had gone onto complainant's front porch and lay down on the glider in an attempt to elude them, and that it was only a mere coincidence that another person was trying the windows on the side of the house while he lay on the glider bobbing his head up and down. The pivotal issue, therefore, was the state of mind of the defendant.

This Court has held that minimal circumstantial evidence is sufficient to sustain the conclusion that a defendant entertained the intent to break and enter with intent to commit larceny. *People v Palmer,* 42 Mich App 549, 551–552; 202 NW2d 536 (1972). Unlike the facts in *Palmer,* however, we think the facts in the case at bar are such that the trier of fact could properly infer from the evidence an intent to commit larceny rather than some other mischief. See *Palmer, supra,* at 552. We think that there was sufficient evidence for the trier of fact to conclude that defendant Jablonski was acting in concert with someone, perhaps as a lookout, in an attempt to break and enter with an intent to commit larceny. See *People v Fuller,* 395 Mich 451; 236 NW2d 58 (1975).

Defendant Jablonski next contends that the trial court committed reversible error by eliciting testi-

mony which showed that he might be guilty of a criminal offense for which he had not been charged. We disagree. A trial court sitting as a trier of the facts determines the credibility of witnesses, and has not only the right but the duty to ask material questions of witnesses so as to clarify the matters before it. *People v Dodson,* 9 Mich App 123, 127; 155 NW2d 876 (1967). In the case at bar the trial judge was clearly attempting to test the credibility of defendant Jablonski's testimony by asking for corroborating details. Even if there had been error committed at this point, there was no objection by defendant, and this Court will not consider such error on appeal absent a showing of a miscarriage of justice. This issue is without merit.

Defendant Aleman contends on appeal that there was insufficient evidence to support a conviction for attempted breaking and entering and that the trial court committed reversible error by admitting certain physical evidence which the prosecutor had failed to link to an attempted breaking and entering. The prosecution argues that there was ample circumstantial evidence to support a conviction. The prosecutor points to the fact that defendant was in a quiet Hamtramck residential neighborhood, that this was not along a route which defendant could reasonably be expected to take on his way home, that defendant ran from complainant's house when he saw the police approaching, that he had in his pockets a nylon stocking, rosebush cutters, a penlight flashlight, two skeleton keys and a pair of gloves, that the phone wires and a screen had been cut at complainant's house, and that Aleman had claimed he had merely been jogging, despite the fact that his home was in Westland, all of which tended to

show that defendant did attempt to break and enter complainant's home at about midnight on the night in question.

The defendant's theory was that he was on the way home when his truck stalled, that he was walking to seek help, that he stopped at complainant's house behind a shrub to urinate, and that it was someone else who had attempted to break and enter complainant's home. Defendant relies on the case of *People v Davenport,* 39 Mich App 252; 197 NW2d 521 (1972), for the proposition that where the people's case is based on circumstantial evidence the prosecution has the burden of proving that there is no innocent theory possible which will, without violation of reason, accord with the facts. We agree with defendant that the test was stated in *People v Sessions,* 58 Mich 594, 606; 26 NW 291 (1886), that where guilt in a criminal matter is sought to be proved by circumstantial evidence, the facts from which the inferences are drawn must be proved beyond any reasonable doubt, and the inferences must be such as will admit of no other rational conclusion. In the case at bar, the essential circumstances were not disputed so the only question for the trier of fact to determine was what inferences should be drawn from those facts. This is a judgment call and turns on what the trier of fact considers to be other "rational" conclusions. The defendant argues that the prosecution did not negate every reasonable theory consistent with his innocence and that, to the contrary, he offered a cogent, compelling and logical explanation for his behavior. The trier of fact determined otherwise. It is for the trier of fact to determine if the prosecution has in fact negated every reasonable theory consistent with the defendant's innocence. *People v Fuller,* 395 Mich 451, 455; 236 NW2d 58 (1975).

Finally, defendant's contention that the trial judge erred in admitting into evidence the bush cutters which were taken from him at the time of his arrest lacks merit. The case cited by defendant, *People v Hall,* 19 Mich App 95; 172 NW2d 473 (1969), clearly stands for the well settled principle of law that weapons or tools found in an accused's possession at the time of his arrest may be introduced in evidence at his trial without proof that they were the very weapons or tools used by him in the crime with which he is charged, if the weapons or tools might have been the ones that were used. We find the case of *People v Jordan,* 23 Mich App 375; 178 NW2d 659 (1970), to be inapposite. *Jordan* was a case where defendant was charged with the rape of a nine-year-old girl. A handkerchief, belonging to defendant, and described by the complainant, was the only piece of evidence other than complainant's uncorroborated testimony, which tended to link defendant to any criminal act. Further, the Court noted that such cases involved exceptionally difficult questions of guilt in a psychologically complicated and emotionally charged context of a sexual offense, and that courts have tended to treat such cases as *sui generis* and have found reversible error in points which might otherwise pass unnoticed. *Jordan, supra,* at 383. We find the admission of the cutters in this case to be neither erroneous nor unduly prejudicial.

Both convictions affirmed.