PEOPLE v KRAMER

Docket No. 48099. Submitted November 13, 1980, at Lansing.—Decided February 17, 1981.

Jeffrey Kramer was convicted of armed robbery, kidnapping, and three counts of assault with intent to commit murder in a joint trial with defendant Larry Kramer, in Oakland Circuit Court, John N. O'Brien, J. Defendant Jeffrey Kramer appeals, alleging that 1) the trial court erred in denying his motions for a separate trial from his codefendant, 2) the trial court erred in denying his motion for separate juries for himself and his codefendant, 3) he was denied a fair trial because counsel for his codefendant recalled a prosecution witness for testimony, 4) the trial court's denial of the defendant's motion for a mistrial resulted in reversible error, 5) the three shotguns found in the van in which he was arrested were improperly admitted into evidence without being ballistically linked to the robbery or assaults, and 6) the trial court erred in denying the defendant's motion to suppress from evidence all the weapons found in the van. *Held:*

1. A separate trial from a codefendant is not a defendant's right but is advisable where the defendants' defenses are antagonistic. The trial court is given discretion as to whether or not to grant a defendant's motion for a separate trial. To support a

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 21 Am Jur 2d, Criminal Law § 127.
    75 Am Jur 2d, Trial § 17.
[2] 75 Am Jur 2d, Trial §§ 20, 21.
    Antagonistic defenses as ground for separate trials of codefendants in criminal case. 82 ALR3d 245.
[3] 75 Am Jur 2d, Trial § 12.
[4] 5 Am Jur 2d, Appeal and Error §§ 553, 557.
[5] 5 Am Jur 2d, Appeal and Error § 867.
[6] 76 Am Jur 2d, Trial §§ 1075, 1076, 1080.
[7] 5 Am Jur 2d, Appeal and Error § 774.
[8] 29 Am Jur 2d, Evidence §§ 253, 260.
[9] 29 Am Jur 2d, Evidence § 827.
[10] 5 Am Jur 2d, Appeal and Error §§ 881, 883.
[11] 68 Am Jur 2d, Search and Seizure § 2 *et seq.*

motion for a separate trial, a defendant must prove that a joint trial with a codefendant will infringe upon his substantial rights. The trial judge did not abuse his discretion in denying the defendant's motion for a separate trial.

2. The use of separate juries for codefendants is not violative of a defendant's constitutional or statutory rights to trial by a jury. The trial court did not abuse its discretion by denying the defendant's motion for separate juries.

3. The defendant did not object at trial to the recall of the prosecution witness by counsel for his codefendant. This failure to object precludes appellate review absent manifest injustice. Here, there is no manifest injustice.

4. There was no abuse of discretion in the trial court's denial of the defendant's motion for a mistrial based on the unsolicited response of a witness called by the prosecutor regarding the presence of "additional weapons" in the defendant's van since there was no affirmative showing of prejudice to the rights of the defendant.

5. The decision to admit arguably prejudicial evidence is committed to the trial court's discretion. Since the shotguns were similar to the shotgun allegedly held by one of the robbers, there was no abuse of discretion in the trial court's admitting the shotguns into evidence. It is not essential that a weapon be tied ballistically to a crime in order to be admissible into evidence. Although it is possible that the evidence of the shotguns should have been excluded because of the possibility that its prejudice outweighed its probative value, the admission of the evidence was harmless beyond a reasonable doubt since the jury would undoubtedly have convicted the defendant without the erroneously admitted evidence.

6. The trial court did not abuse its discretion in denying the defendant's motion to suppress all weapons found in the van since the search and seizure of the van for the weapons was reasonable under the circumstances.

Affirmed.

1. CRIMINAL LAW — SEPARATE TRIALS — STATUTES.

A trial court has discretion to determine whether a defendant is entitled to a trial separate from a codefendant (MCL 768.5; MSA 28.1028).

2. CRIMINAL LAW — SEPARATE TRIALS.

A defendant is not entitled to a separate trial from a codefendant as of right but separate trials are advisable where the defendants' separate defenses are antagonistic; to support a motion

for a separate trial a defendant must prove that a joint trial will infringe upon his substantial rights.

3. CRIMINAL LAW — SEPARATE JURIES — JOINT TRIALS.

The use of separate juries in the same trial is not violative of a defendant's constitutional or statutory rights to a trial by jury; but a determination as to whether a defendant in a joint trial is entitled to a separate jury is in the trial court's discretion.

4. APPEAL — PRESERVING ISSUE.

Failure to object to the testimony of a witness at trial will preclude appellate consideration of the issue in the absence of manifest injustice.

5. APPEAL — MISTRIAL.

A denial of a motion for a mistrial will not be reversed on appeal in the absence of an affirmative showing of prejudice to the rights of the accused.

6. CRIMINAL LAW — MISTRIAL.

The declaration of a mistrial in a criminal case rests in the sound discretion of the trial judge.

7. WORDS AND PHRASES — ABUSE OF DISCRETION.

A result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment, but the defiance thereof, not the exercise of reason, but rather of passion or bias before it can be considered as an abuse of discretion.

8. EVIDENCE — PREJUDICIAL EVIDENCE.

The decision to admit arguably prejudicial evidence is committed to the trial court's discretion.

9. WEAPONS — EVIDENCE.

It is not essential that a weapon be tied ballistically to a crime in order to be admissible into evidence.

10. EVIDENCE — SUPPRESSION OF EVIDENCE — MOTION TO SUPPRESS — APPEAL.

The decision on a motion to suppress evidence is one committed to the trial court's discretion, which decision will not be overturned absent a finding of abused discretion.

11. SEARCHES AND SEIZURES — REASONABLENESS.

A court should focus on the specific facts and circumstances of a case to determine whether a search and seizure was constitutionally reasonable.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Geoffrey H. Nickol,* Assistant Prosecuting Attorney, for the people.

*Frederick W. Heath,* for defendant on appeal.

Before: M. J. KELLY, P.J., and ALLEN and C. L. HORN,* JJ.

M. J. KELLY, P.J. Defendant appeals as of right from his jury convictions for armed robbery, contrary to MCL 750.529; MSA 28.797, kidnapping, contrary to MCL 750.349; MSA 28.581, and three counts of assault with intent to commit murder, contrary to MCL 750.83; MSA 28.278.

## FACTS

At approximately 2:15 a.m. on April 3, 1978, two men wearing dark-colored ski masks and gloves and brandishing shotguns robbed the Red Oaks Bar in Wixom. Upon entering the bar, the two men ordered the five customers and bartender then present to lie on the floor. The men then removed and searched the wallet of each customer and purse of Marion Molk, the bartender. Molk later discovered that $70 was removed from her purse.

The proprietor of the Red Oaks, Nicholas Curcuru, came to the bar while the robbery was in progress, but was not noticed by the intruders. Curcuru left before being discovered and telephoned the police. Officers from the Wixom and Wolverine Lake Police Departments arrived at the scene while the robbery was still in progress.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Sergeant Lawrence Beamish of the Wixom Police Department, the first officer to arrive, observed a male who was wearing a ski mask and holding "what appeared to be a sawed-off shotgun". Upon seeing Beamish, the man fired a shot which struck Beamish in the hand.

The two robbers then took Marion Molk as a hostage and left the bar in a "reddish-brown" pickup truck. The police gave chase, and several shots were exchanged. Deputy Andre Bowen and Deputy Douglas Eader of the Oakland County Sheriff Department set up a road block in an attempt to stop the pickup truck. As the truck approached their parked cruiser, it slowed down and swerved around the vehicle. Deputy Bowen received a shotgun blast to the left side of his face as the truck traveled around the cruiser. Deputy Eader was struck in the hand and arm by a shotgun pellet fired from the truck. Another road block was set up by the Novi Police Department at the intersection of 13 Mile Road and Haggerty Road. About four or five shots were fired in that area. The robbers finally stopped the pickup truck on Haggerty Road, about one-half mile south of 13 Mile, and escaped on foot.

A loaded 16-gauge sawed-off shotgun, three shotgun shells and an empty ammunition box were found near the truck's right bumper. Three shells were also found inside the cab of the pickup truck. Two of these were live 12-gauge shells and the third was a spent 12-gauge shell casing. John Ryan, an identification technician in the Oakland County Sheriff Department, processed the bar, truck, shotgun, and the shells for fingerprints, but none were obtained. Two spent shotgun shells were also found inside the Red Oaks.

On the morning of April 13, 1978, Debora Cox,

defendant's former girlfriend, was taken to Detroit Metropolitan Airport in a blue van by Larry Kramer and the defendant. When they arrived at the airport, Larry Kramer accompanied Ms. Cox to the Southern Airlines ticket counter while the defendant remained in the van. Ms. Cox and Larry Kramer were surrounded by 10 to 15 police officers inside the terminal, and Larry Kramer was placed under arrest. Ms. Cox identified the truck driven by the robbers as that which both Jeffrey Kramer and Larry Kramer had driven to her home on the night of April 2, 1978, just hours before the robbery.

Following the arrest of Larry Kramer, Detective Sergeant Mark Goodrich of the Oakland County Sheriff Department noticed a blue van outside the terminal and recognized the defendant as its driver. Goodrich then directed the defendant to get out of the van, placed him under arrest and searched his person. When the van began rolling down the ramp outside the terminal, Goodrich entered the van and placed it in park. Goodrich then ran a computer check on the license plate and the VIN number to determine the van's ownership. Since the van was still on the ramp in front of the main terminal, Goodrich reentered the vehicle and drove it directly to the Wayne County Sheriff's Annex at Metropolitan Airport. When Goodrich opened the door on the driver's side of the vehicle, he observed a shotgun lying next to the driver's seat. After driving the van to the Sheriff's annex, Goodrich obtained a search warrant. In executing the search, Goodrich discovered a loaded 12-gauge sawed-off pump shotgun near the driver's seat. He also found three other shotguns, one or more rifles, several shotgun shells, and a quantity of marijuana in the rear of the van.

During trial, counsel for defendants Larry and Jeffrey Kramer moved to exclude from evidence the items that were found in the van on April 13, 1978. Defense counsel contended that the items were irrelevant to the case and unduly prejudicial to the defendants if placed in evidence. The prosecutor and defense counsel stipulated that the marijuana would not be introduced into evidence. The trial court decided to exclude the rifles from evidence and to admit the shotguns into evidence. Of the four shotguns found in the van, only the 12-gauge sawed-off pump shotgun found near the driver's seat was ballistically linked to the robbery. Subsequent motions for a mistrial, separate trials and separate juries were similarly denied.

## I—SEPARATE TRIALS

Defendant first alleges error in the trial court's decisions, twice denying motions for separate trials. Defendant argues that these denials forced him to forego reliance on an available alibi defense, because of codefendant Larry Kramer's refusal to assert a similar defense.

The decision on a motion for separate trials is one left to the discretion of the trial court. MCL 768.5; MSA 28.1028, *People v Wright (On Remand),* 99 Mich App 801, 821; 298 NW2d 857 (1980). In *People v Hurst,* 396 Mich 1, 6-9; 238 NW2d 6 (1976), the Supreme Court held that separate trials are not a defendant's right, but are advisable where the defendants' separate defenses are antagonistic. To support the motion, a defendant must prove that a joint trial will infringe upon his "substantial rights". *People v Wright, supra,* citing *People v Carroll,* 396 Mich 408; 240 NW2d 722 (1976). In the instant case, counsel for

codefendant Larry Kramer alleged that a refusal of separate trials would place the defendants in an antagonistic position. However, neither attorney nor defendant provided support for this allegation at trial. Absent any factual predicate for an affirmative showing of prejudice, we are unable to conclude that the trial court abused its discretion in denying defendant's motion. *People v Wright, supra, People v Schram,* 378 Mich 145; 142 NW2d 662 (1966).

## II—SEPARATE JURIES

The trial court's decision denying defendant's motion for separate *juries* is also assailed as reversible error. In *People v Brooks,* 92 Mich App 393, 396-397; 285 NW2d 307 (1979), this Court approved of the dual jury procedure as an alternative means to avoid the problems arising from a joint trial of defendants whose defenses were antagonistic. The *Brooks* Court did not, however, articulate a standard to guide trial courts in deciding the validity of a motion for separate juries.

In *United States v Rowan,* 518 F2d 685, 690 (CA 6, 1975), the Court approved the use of multiple juries as a permissible response to a defendant's motion for severance of a joint trial under FR Crim P 14:

"Under Rule 14, Fed R Crim P, the question of partial or total severance is within the sound discretion of the trial judge. *United States v Goble,* 512 F2d 458, 465-66 (6th Cir 1975); *United States v Lee,* 428 F2d 917, 920 (6th Cir 1970); *United States v Etheridge,* 424 F2d 951, 967 (6th Cir 1970). Jackson's actions were intertwined with those of his co-defendants, and he cannot claim 'cumulation of prejudice by charging defendants with similar but unrelated offenses.' *United States v Reynolds,* 489 F2d 4, 6 (6th Cir 1973), quoting *Cupo v*

*United States*, 123 US App DC 324, 359 F2d 990, 993 (1966). Indeed, what was effectively a joint trial to two juries was appropriate if the entire incident was to be fully explained. The fact that the District Court granted a form of severance for a purpose which disappeared when Jackson chose not to call Gaddie to the stand does not affect the principle that Jackson must show substantial prejudice to override the District Court's discretion in denying complete severance. In fact, the Gaddie-Rowan jury rebutted Jackson's claim of undue prejudice flowing inevitably from the photograph of Gaddie, since it acquitted Rowan of bank robbery. The District Court's discretion was not abused."

See also *United States v Sidman*, 470 F2d 1158 (CA 9, 1972). We are persuaded that the use of separate juries is not violative of the defendant's constitutional or statutory rights to trial by a jury.

The language employed by the Sixth Circuit above discloses that the use of separate juries is merely a partial form of severance and is to be evaluated under factors applicable to motions for separate trials. Further, the discretion accorded the Federal District Court to employ complete or partial severance is similar to the discretion available to our own trial court. Thus, we conclude that the standard of review governing the instant defendant's motion for separate juries is the same as that for his companion motion for separate trials. Applying this standard to the facts at bar, we perceive no abuse of the trial court's discretion.

## III—WITNESS IDENTIFICATION

Defendant next asserts that he was denied a fair trial when counsel for codefendant Larry Kramer recalled Mildred Lobkovich, a prosecution witness. The claim is also made that the two defense attorneys disagreed over the advisability of recalling

Mrs. Lobkovich, and that cocounsel's insistence on a recall should have caused the trial court to grant separate trials. On recall, Mrs. Lobkovich identified both defendants as the March 31, 1978, operators of a truck resembling that which was abandoned by the robbers. In her previous examination, Mrs. Lobkovich had been unable to so identify the defendants.

Our review of the record discloses no record objection to the recall of witness Lobkovich. Absent manifest injustice, this failure to object to the testimony of the witness will preclude our consideration of the issue on appeal. *People v Sommerville,* 100 Mich App 470; 299 NW2d 387 (1980). We conclude, in light of the substantial circumstantial evidence otherwise admitted, that any prejudice to the defendant's case did not rise to the level of manifest injustice.

## IV—OTHER WEAPONS

Defendant further challenges as reversible error the trial court's denial of the defendant's motion for a mistrial based upon the response of a prosecution witness which divulged the presence of other weapons in defendant's van. The motion came after the following colloquy between the prosecutor and Detective Goodrich:

"*Q.* (By Mr. Trenta, continuing) Now as to the last three items, each of them 15, 16 and 17, it's your indication that they were located somewhere in the rear of the van in the two separate locations you mentioned?

"*A.* Yes, in between the two bench *[sic].* There were some shotguns covered I believe with a blanket, there were some additional weapons underneath the bench, where the bench—it was the bench on the driver's side of the vehicle.

*"Mr. Heath:* I'll object, Your Honor, and move that be stricken.

*"The Court:* Objection sustained."

In a subsequent discussion held outside the presence of the jury, the prosecutor and defense counsel agreed that a cautionary instruction would only serve to highlight the unsolicited response. The parties thus refused the trial court's offer to instruct the jury not to consider testimony as to inadmissible evidence.

Our standard of review of motions for a mistrial was recently restated in *People v Jackson,* 100 Mich App 146, 159; 298 NW2d 694 (1980):

"The rule in this jurisdiction is that in the absence of an affirmative showing of prejudice to the rights of the accused, a denial of a motion for mistrial will not be reversed on appeal. *People v Moran,* 36 Mich App 730; 194 NW2d 555 (1971), *People v Qualls,* 9 Mich App 689; 158 NW2d 60 (1968), *lv den* 381 Mich 763 (1968), *cert den* 393 US 960; 89 S Ct 397; 21 L Ed 2d 374 (1968). The declaration of a mistrial in a criminal case rests in the sound discretion of the trial judge. *Qualls, supra,* 693."

Applying this standard, we do not believe that the defendant was prejudiced by witness Goodrich's remark. The remark was no more than an unsolicited response to a legitimate question by the prosecutor concerning the location in the van of the three shotguns admitted as evidence. Further, the statement did not necessarily refer to weapons other than the three shotguns. It is equally possible that the jury interpreted Goodrich's remark as referring to evidence of remaining shotguns already admitted. Therefore, no abuse of discretion is evident as that term was defined in *Spalding v Spalding,* 355 Mich 382, 384-385; 94 NW2d 810 (1959):

"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."

## V—SHOTGUNS

We next address the defendant's claim that three shotguns found in the van in which he was arrested were improperly admitted into evidence without being ballistically linked to the robbery or assaults. For purposes of satisfying MRE 403, we note that firearms possessed by a defendant have been held to be probative even if found not to have been used in the charged crime. Additionally, the decision to admit arguably prejudicial evidence is committed to the trial court's discretion. *People v Medrano,* 101 Mich App 577; 300 NW2d 636 (1980). In *People v Miner,* 22 Mich App 673, 676; 177 NW2d 719 (1970), this Court quoted the following passage from 22A CJS, Criminal Law, § 712, pp 965-967:

"Weapons or other instruments which are in no way, or not sufficiently, connected with the crime, or concerning which there is insufficient evidence from which a jury might reasonably infer that they were used in the commission of the crime, are inadmissible to show that they were so used, even where they are connected with accused, and certainly where they are not connected with accused. However, a weapon or instrument found in the possession of accused or of his criminal associates which, although not identifed as the one actually used, is similar in form and character thereto,

or which, from the circumstances of the finding justifies an inference of the likelihood or possibility of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred, or for the purpose of illustration, or of showing preparation, or the state of mind or intent of accused. Moreover, weapons known or conceded not to have been used in the crime are admissible where they have some probative weight or where they constitute part of the picture."

See also *People v Jablonski,* 70 Mich App 218, 226; 245 NW2d 571 (1976).

The airport search of defendant's van disclosed a total of four shotguns. The first, a sawed-off pump shotgun found near the driver's seat, was directly connected to the crimes charged and is not at issue herein. The remaining three shotguns were apparently not of the sawed-off variety. Defendant's claim that these three guns were inadmissible unless "tied ballistically" to the robbery is rejected. It is apparent that one of the long barrel shotguns was similar to the firearm held by the second robber in the Red Oaks Bar. In this regard, we note the testimony of Arthur Lewis, who identifed the weapon held by the second robber as "some kind of a shotgun or rifle". Since the shotguns were similar to that allegedly held by the second robber, we can discern no abuse of discretion in their admission. Further, we do not think it is essential that a weapon be tied ballistically to a crime in order to be admissible. Since such weapons were fired on police officers during the escape, they might have been the ones that were used. *People v Jablonski, supra, People v Hall,* 19 Mich App 95; 172 NW2d 473 (1969). See also *People v Kelly,* 386 Mich 330; 192 NW2d 494 (1971).

Although it is arguable that under MRE 403 the evidence, even if slightly probative, should have been excluded because the possibility of prejudice outweighed its probative value, we believe the error is harmless beyond a reasonable doubt. Defendant has not challenged the admission of a sawed-off shotgun that was found near the driver's seat of the van, nor the admission of the shotgun that was found on Haggerty Road behind the pickup truck on the night of the robbery. We believe the trial court's admission of three additional shotguns does not require reversal, even if it constituted error. The other circumstantial evidence in the case was very strong, and we are convinced beyond a reasonable doubt that the jury would have convicted the defendant without the erroneously admitted evidence. *People v Norwood,* 70 Mich App 53; 245 NW2d 170, *lv den* 397 Mich 884 (1976).

## VI—SEARCH AND SEIZURE

Lastly, error is alleged in the trial court's denial of defendant's motion to suppress from evidence at trial all weapons found in the van. The defendant argues that the second entry of the van at Metropolitan Airport by Detective Goodrich, during which the weapons in question were first noticed, constituted an illegal search and seizure. US Const, Am IV; Const 1963, art 1, § 11.

We restate the applicable standard of appellate review; the decision on a motion to suppress is also one committed to the trial court's discretion, which decision will not be overturned absent a finding of abused discretion. *People v Erskin,* 92 Mich App 630, 642; 285 NW2d 396 (1979), *People v Young,* 89 Mich App 753; 282 NW2d 211 (1979). In *South Dakota v Opperman,* 428 US 364; 96 S Ct

3092; 49 L Ed 2d 1000 (1976), the Supreme Court upheld the use of routine inventory searches designed to protect police and defendants from claims of personal injury, lost or stolen property, or where the search was not intended to conceal other investigatory motives. The Court focused on the community-caretaking functions of police, to hold:

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' *Cady v Dombrowski, supra,* at 441, 47 L Ed 2d 706, 93 S Ct 2523, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities.

"Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." (Footnote omitted.)

See also *Cady v Dombrowski,* 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973), and *People v Long,* 94 Mich App 338, 347; 288 NW2d 629 (1979), *lv gtd* 409 Mich 869 (1980).

To determine the Fourth Amendment reasonableness of a given search and seizure, a court will focus on the specific facts and circumstances of the case. *Cooper v California,* 386 US 58, 59; 87 S Ct 788; 17 L Ed 2d 730 (1967). The instant facts do not differ substantially from those found to justify an inventory search in *People v Boutell,* 80 Mich App 216; 263 NW2d 36 (1977). In both cases, the

searched vehicles were left in high traffic areas where their continued presence would impede the orderly flow of vehicular traffic. Further, as in *People v Roberson,* 80 Mich App 241; 263 NW2d 42 (1977), it would not have been responsible police conduct to park the van at the place of defendant's arrest or to entrust the vehicle to Debora Cox, who was at the airport to fly to Nashville. In light of these facts and circumstances, we are unable to find an abuse of discretion by the trial court.

Affirmed.