## PEOPLE *v.* QUALLS.

1. CRIMINAL LAW—INFLUENCING JURY—MISTRIAL—DISCRETION OF COURT.

Refusal of trial court to grant defendant's motion for mistrial based on claim that a juror had heard a brother of one of the victims of his voluntary manslaughter verbally abusing defendant's lawyer *held,* not an abuse of discretion, where judge asked jury whether they could recall any incident outside the courtroom which would influence their thinking or verdict or tend to prejudice them in any way, and when there was no affirmative response, asked whether counsel for either side had any other questions for the jury (CL 1948, § 750-.321).

2. SAME—MISTRIAL—DISCRETION OF COURT.

Declaration of mistrial in a criminal case rests in the sound discretion of the trial judge.

3. SAME—MISTRIAL—NONPREJUDICIAL IRREGULARITY.

A mistrial in a criminal case should not be declared in consequence of any mere irregularity which is not prejudicial to the rights of the defendant.

4. SAME—IMPROPER CONTACT WITH JURY—MISTRIAL—PREJUDICE.

Not every improper contact with a jury presents grounds for a mistrial in a criminal case and an appellate court will reverse only when prejudice is affirmatively shown or facts clearly establish the inference that it occurred from what was said or done.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 21 Am Jur 2d, Criminal Law §§ 194, 198.
[2] 21 Am Jur 2d, Criminal Law §§ 194, 201, 204.
[5] 21 Am Jur 2d, Criminal Law § 195.
[6] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[7] 16 Am Jur 2d, Constitutional Law § 573; 21 Am Jur 2d, Criminal Law § 318 *et seq.*
  Duty to advise accused as to right to assistance of counsel. 3 ALR2d 1003.
  Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.
[8] 5 Am Jur 2d, Appeal and Error § 549.
[9–12] 53 Am Jur, Trial §§ 302, 415–426.
[13] 26 Am Jur, Homicide §§ 323–325.

5. Same—Failure to Complain of Irregularities—Waiver.

A defendant who chooses to take the chance of an acquittal on the merits, without complaining of irregularities at the trial, waives his objections.

6. Same—Admissions—Objections.

Defendant's failure to raise an objection in the trial court that certain admissions elicited from him during interrogation by policemen while he was in custody were improperly admitted into evidence *held*, to preclude him from raising the objection on appeal after conviction of voluntary manslaughter, where he suffered no clear injustice by admission of the evidence (CL 1948, § 750.321).

7. Same—Constitutional Law—Appointed Counsel.

Advising a defendant that he had a right to counsel without informing him that counsel would be appointed if he were without funds is contrary to the spirit and language of United States Supreme Court case dealing with right to counsel during interrogation.

8. Appeal and Error—Failure to Object—Inherent Power of the Court.

Failure to object to errors in the lower court precludes their being raised for the first time on appeal, but the inherent power of the Court of Appeals to prevent fundamental injustice is not limited by what appellant is entitled to as a matter of right.

9. Criminal Law—Voluntary Manslaughter—Directed Verdict of Not Guilty.

Denial of defendant's motion for directed verdict of not guilty of voluntary manslaughter, made on ground that prosecution had not proven the element of provocation, *held*, not an abuse of discretion where trial court took the motion under advisement and defendant thereafter gave testimony which supplied element of provocation and supported verdict of guilty (CL 1948, § 750.321).

10. Same—Directed Verdict—Trial Court—Evidence—Jury.

The direction of a verdict of not guilty is addressed to the discretion of the trial court, and the trial judge should not direct a verdict where there is sufficient evidence to submit the case to a jury and justify a conviction.

11. Same—Manslaughter—Motion for Directed Verdict.

Motion for directed verdict, which was based on the fact that the prosecution had not conclusively demonstrated the pres-

ence of provocation in a trial for voluntary manslaughter, *held,* properly denied, where the subsequent testimony of the defendant supplied the deficiency (CL 1948, § 750.321).

12. SAME—DENIAL OF MOTION FOR DIRECTED VERDICT.

The trial judge is correct in denying a motion for a directed verdict when testimony supporting the prosecution's theory is subsequently supplied by the defendant.

13. SAME—VOLUNTARY MANSLAUGHTER—DEFENDANT'S STATE OF MIND —QUESTION FOR JURY.

The question of defendant's state of mind at the time of the homicide *held,* properly a question of fact for the jury under record presented in a trial for voluntary manslaughter (CL 1948, § 750.321).

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted Division 1 October 4, 1967, at Detroit. (Docket No. 3,317.) Decided March 21, 1968. Rehearing denied April 29, 1968. Leave to appeal denied July 23, 1968. See 381 Mich 763. Certiorari denied by Supreme Court of United States November 25, 1968.

Ewell C. Qualls was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Riseman, Lemke & Piotrowski,* for defendant.

LESINSKI, C. J. The defendant, Ewell C. Qualls, was convicted by a jury of the crime of manslaughter* and sentenced to prison.

The facts reveal that on April 3, 1965, the Highland Park police department was summoned to an

---
* CL 1948, § 750.321 (Stat Ann 1954 Rev § 28.553).

address in that city to investigate a shooting. Upon arrival, the officers observed the defendant in the doorway with a revolver in his hand. The defendant motioned for the police to enter, and the bodies of Ervin Kopas and Mervyn Shewell were found therein. The defendant was arrested, stood trial, and was convicted of voluntary manslaughter in the death of Mervyn Shewell.

On appeal, as his first assignment of error, the defendant contends the trial court abused its discretion by failing to grant a motion for a mistrial when it was brought to the court's attention that the brother of Ervin Kopas had heaped verbal abuse on defense counsel, allegedly in the presence of a juror. The brother was questioned by the court in the absence of the jury about the incident and his account in response was as follows:

"*The Court:* Were there other people in the elevator?

"*Mr. Kopas:* Yes, there was my wife and some counsel of his [defendant]. That to my awareness was all that was in the elevator, and as to regards as to what I recall exactly what I said. I said, I asked him, I said, 'Are you happy in your chosen profession?' I said, 'I hope you're happy in your chosen profession,' and I didn't recall the response that I got from him, and *there was no mention whatsoever of Qualls.* I just told him that my opinion of him was very low in his type of line of work he's doing, and that if there was a hell anywhere he would find it, and that's exactly as far as I can remember, that was the exact words. *There was no mention of this particular case,* or in essence it was just like he says, a personal attack on his character." (Emphasis supplied.)

The trial judge recalled the members of the jury and inquired of them collectively, "if you can recall or think of any incident or occurrence outside of

the courtroom which would in any way influence your thinking, or your verdict in this case, or tend to prejudice you in any way against one side or the other." This inquiry failed to elicit an affirmative response from any of the jurors, whereupon the judge asked if counsel for either side had any other questions for the jury. Both counsel stated they had no further questions.

The defendant, on appeal, contends that the trial judge abused his discretion in denying the motion for a mistrial, and further, that the investigation made by the trial judge concerning the verbal attack on defense counsel, reportedly in the presence of a juror, was not complete enough to ascertain whether defendant had been prejudiced by the incident. The record does not reveal the abuses the defendant urges.

When the trial court learns of an incident, such as happened in this case, arising during the progress of the trial, fairness to the defendant requires that the trial judge ascertain its prejudicial effect. And whether or not the circumstances establish that a mistrial should be declared rests in the sound discretion of the trial judge. *People* v. *Bigge* (1941); 297 Mich 58. Moreover, a mistrial should not be declared in consequence of any mere irregularity which is not prejudicial to the rights of the defendant. *People* v. *Watson* (1943), 307 Mich 596.

In *People* v. *Schram* (1966), 378 Mich 145, our Supreme Court was confronted with the same problem as in the instant case. The rule adopted in *Schram, supra,* is that not every improper contact with a jury presents grounds for a mistrial and the appellate court will reverse only when prejudice is affirmatively shown or facts clearly establish the inference that it occurred from what was said or done. See, also, *People* v. *Nick* (1960), 360 Mich 219.

Assuming *arguendo* that the trial judge should have been more extensive in his inquiry, the position that defendant herein urges is certainly inconsistent with his position at trial, that he was satisfied with the court's inquiry and had no further questions. This Court views the defendant's present position as an afterthought; by failing to make further requests of the trial judge, the defendant has effectively waived the right to complain. It has been said on good authority that "It is only in furtherance of good practice to hold that a defendant who chooses to take the chances of an acquittal on the merits, without complaining of irregularities at the trial, waives his objections." 2 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 715, p 909. We find that the inquiry of the trial judge, while not exhaustive, was sufficient under the facts presented to satisfy the spirit of *Schram, supra,* and justified the denial of the motion for a mistrial.

In his second assignment of error, the defendant contends that certain admissions elicited from him during in-custody interrogation were improperly admitted into evidence. In support of his contention, he directs our attention to *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L ed 2d 694, 10 ALR3d 974). The defendant's position is persuasive in that prior to questioning by the police, although he was advised of his right to counsel, he was never advised that this right included "retained or appointed" counsel. Certainly advising the defendant that he had a right to counsel without informing him that counsel would be appointed if he was without funds is contra to the spirit and the language of *Miranda, supra.* See, also, 80 Harv L Rev (1966–1967), pp 91, 201.

The position that the defendant maintains on appeal is again, however, inconsistent with his posture in the lower court. The record reveals that the

statements made by defendant which he now contends were inadmissible at the trial, were, in fact, carefully scrutinized by him when defense counsel cross-examined the people's police witnesses. We will not speculate as to the purpose of defense counsel's approach but find that in the absence of an objection in the court below, he is in no position to complain. *People* v. *Bauman* (1952), 332 Mich 198.

It is settled law that the failure to object to alleged errors in the lower court precludes their being raised for the first time on appeal. However, in *People* v. *Paul F. Baker* (1967), 7 Mich App 471, 475, this Court stated:

"However, this Court in observing this general rule, will exercise its 'prerogative of searching for error which reflects clear injustice.' *People* v. *Hicks* (1966), 2 Mich App 461, 463. 'The inherent power of this Court to prevent fundamental injustice is not limited by what appellant is entitled to as a matter of right.' *People* v. *Dorrikas* (1958), 354 Mich 303, 316."

Viewing the entire record, we find that the defendant has suffered no "clear injustice" and his failure to raise an objection in the trial court precludes him from raising it here.

Last, the defendant contends that the record fails to demonstrate that the jury verdict was supported by the evidence and further that his motion for a directed verdict, made at the close of the prosecution's case, should have been granted. The defendant's motion was based upon the allegation that the prosecution had failed to introduce testimony from which the jury could reasonably infer that the element of provocation necessary for the crime of voluntary manslaughter was present.

At trial, the court took the defendant's motion under advisement and defense counsel then presented

his case. The defendant testified as to the circumstances surrounding the homicides. The defendant's testimony, this Court finds, sufficiently warranted the denial of the motion and supported the ultimate verdict of guilty.

On direct examination the defendant testified:

"*Q.* And what did Larry [the decedent Shewell] say?

"*A.* Well, just like he said, 'I can't do nothing with him' and he said, 'Besides its a hell of a note to have somebody in your house and then call the cops on them and start arguing.'"

The defendant expressly admitted on direct examination to having an argument with the decedent Shewell as follows:

"*Q.* What about Mr. Shewell? What, if anything, did he do when Mr. Kopas started toward you around the table?

"*A.* Well, I don't know whether he was after Kopas or coming to help him. I don't know. I know we was in an argument though. We had been arguing.

"*Q.* Well, when had you argued with Mr. Shewell?

"*A.* Well, about the same time that when he said, 'I'm going upstairs,' Kopas.

"*Q.* What did Shewell say?

"*A.* Well, he was kept on hollering about going to call the cops."

Further on cross-examination the defendant testified:

"*Q.* What happened then? Was Larry seated or standing at the time?

"*A.* Well, when it first started he was seated, and when I told him, I said, 'Well, if you don't get him out of here I'm going to call the police,' then that kind of irked him, and started you know, 'Pretty good, sitting here drinking with you, and then call the police on us.'

"*Q.* Larry said that?

"*A.* Yes and we got into quite a little argument there about it.

"*Q.* You and Larry?

"*A.* Yes."

The direction of a verdict is, of course, addressed to the sound discretion of the trial court, and the trial judge should not direct a verdict where there is sufficient evidence to submit the case to a jury and justify a conviction. *People* v. *Sullivan* (1939), 290 Mich 414. In the instant case, although at the time of defense counsel's motion the prosecution had not conclusively demonstrated the presence of provocation, the subsequent testimony of the defendant supplied the deficiency. When testimony supporting the prosecution's theory is subsequently supplied by the defendant, the trial judge is correct in denying a motion for a directed verdict. *People* v. *Barlow* (1903), 134 Mich 394.

The defendant's testimony revealed that the three men had been drinking for several hours prior to the homicide. In addition, the quoted testimony indicated that "quite a little argument" had developed. It was therefore not unreasonable for the jury to infer that the alcohol, coupled with the developing argument, were the ingredients which caused the defendant to respond rashly and without deliberation. The question of the defendant's state of mind at the time of the homicide was properly a question of fact for the jury, and based upon the record we find no reason to interfere with their conclusion. See 3 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 1665, p 2007.

Affirmed.

J. H. GILLIS and T. G. KAVANAGH, JJ., concurred.