PEOPLE v ROYAL

1. Criminal Law—Appeal and Error—Motions—Directed Verdict of Acquittal—Reasonable Doubt.

A reviewing court, in passing on a motion for a directed verdict of acquittal in a criminal case, must consider only the evidence which had been introduced at the time the motion was made, view that evidence in the light most favorable to the prosecution, and determine whether that evidence would justify a reasonable man in concluding that all elements of the crime were established beyond a reasonable doubt.

2. Criminal Law—Obstructing a Police Officer—Sufficiency of Evidence—Knowledge—Directed Verdict of Acquittal.

It must be shown that a defendant actually knew that he was interfering with an authorized police officer in the exercise of his official duty in order to convict the defendant of that offense; knowledge can be inferred from circumstantial evidence, but where proofs presented by the prosecution leave a reasonable doubt as to the defendant's knowledge, the defendant is entitled to a directed verdict of acquittal.

Appeal from Ingham, Marvin J. Salmon, J. Submitted May 12, 1975, at Lansing. (Docket No. 19393.) Decided July 23, 1975.

John Royal was convicted of obstructing a police officer in the lawful discharge of his duty. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Raymond L. Scodeller,* Prosecuting Attorney, and *Lawrence J. Emery,* Assistant Prosecuting Attorney, for the people.

References for Points in Headnotes
[1] 30 Am Jur 2d, Evidence § 1086.
[2] 58 Am Jur 2d, Obstructing Justice §§ 12, 20.

*Elizabeth Schwartz,* Assistant State Appellate Defender, for defendant.

Before: QUINN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

PER CURIAM. Defendant, John Royal, was one of a number of students protesting the presence of military recruiters at Michigan State University in May, 1972. He allegedly frustrated a campus police officer's attempted arrest of a fellow demonstrator. Convicted after jury trial of obstructing that officer in the lawful discharge of his duty, MCLA 750.479; MSA 28.747, he appeals by right.

After the prosecution rested its case, Royal requested a directed verdict on the ground, *inter alia,* that the people had failed to present sufficient evidence to support their claim that he "knowingly" obstructed a police officer. We limit our treatment of the issues raised in this appeal to a discussion of the propriety of the trial judge's decision to deny Royal's motion.

In passing on a motion for a directed verdict of acquittal in a criminal case, the reviewing court must 1) consider only the evidence which had been introduced at the time the motion was made, *People v DeClerk,* 58 Mich App 528; 228 NW2d 447 (1975),[1] 2) view that evidence in the light most favorable to the prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), *People v Watkins,* 36 Mich App 380, 385; 193 NW2d 914 (1971), and 3) determine whether that evidence, if credible and believed, would justify a reasonable

---

[1] It is for this reason that we ignore the testimony of the prosecution's rebuttal witness to the effect that Royal admitted to her that he knew that the man he grabbed was a police officer. We recognize, and decline to follow, cases such as *People v Qualls,* 9 Mich App 689; 158 NW2d 60 (1968), which authorize the reviewing court to consider evidence introduced subsequent to the motion.

man in concluding that all elements of the crime were established beyond a reasonable doubt.[2] *People v Belcher,* 29 Mich App 341, 352; 185 NW2d 440 (1971), *People v Hood,* 37 Mich App 195, 197; 194 NW2d 472 (1971).

Applying these principles to the instant case, we proceed with a summary of the state of the evidence at the close of the prosecutor's case-in-chief (the time the motion was made), in the light most favorable to the prosecution.

Defendant entered the lobby of the MSU student services building, leading a group of approximately 50 student demonstrators. There were several

---

[2] A few cases phrased the test in terms of whether the evidence is "sufficient to support defendant's conviction". *See, e.g., People v Harper,* 365 Mich 494, 503; 113 NW2d 808 (1962), *People v Minney,* 155 Mich 534, 537; 119 NW 918 (1909), *People v Qualls,* 9 Mich App 689, 697; 158 NW2d 60 (1968). It is clear, given *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970), that this formulation is merely shorthand for a reasonable doubt test like that stated above.

Other Michigan cases have employed different words in formulating the directed verdict test: A verdict should be directed in defendant's favor only if "there is no evidence at all upon a material point". *People v Abernathy,* 253 Mich 583, 587; 235 NW 261 (1931), *People v Garcia,* 33 Mich App 598; 190 NW2d 347 (1971), *People v Hodo,* 51 Mich App 628; 215 NW2d 733 (1974).

Both the "no evidence" and the "reasonable doubt" test seek to describe the process by which a trial court must weigh the evidence before it at the time the motion for directed verdict is made. We prefer the "reasonable doubt" formulation for two reasons.

First, it provides a more accurate and complete guideline for decision making. Second, it covers those cases where *some* evidence is introduced by the prosecutor, but that evidence is insufficient to justify ever finding defendant guilty beyond a reasonable doubt. Advocates of the "no evidence" standard can handle this type of case only clumsily, by maintaining that such evidence really amounts to "no evidence" at all.

In addition, the test, be it of the "reasonable doubt" or "no evidence" variety, should be stated positively rather than negatively ("a directed verdict must be granted if * * * " rather than "a directed verdict may not be granted unless * * * "). Such phrasing is preferable because it reminds the trial court—at a particularly critical time —that a defendant has a *right* to a directed verdict if the evidence introduced by the prosecutor is lacking. *Cf. People v Lee,* 391 Mich 618, 640; 218 NW2d 655 (1974) [alibi instruction—should say "if not disproven" rather than "if proven"].

men, dressed in business suits, standing at various points in the lobby. Some of these men were plain-clothed police officers (members of the university Department of Public Safety), others were university administrators and placement office officials.

As the students entered the lobby, four of these men positioned themselves together at the far end of the lobby. One of the men, a Mr. Fitzpatrick, identified himself to the crowd as assistant director of placement and informed the students that they would be allowed to demonstrate in the lobby but could not enter the corridors where interviews were being conducted. Defendant Royal was standing a few feet in front of the four men when Fitzpatrick addressed the crowd.

The students, chanting anti-war slogans, proceeded toward one of the corridors. Fitzpatrick moved out of the way, leaving the other three men to face the crowd. They stood three abreast, across the corridor, blocking the students' path. The man in the middle was carrying a "mobile unit" or walkie-talkie.

As the students moved toward the corridor entrance, the man in the middle stepped forward. He stated that he was Lieutenant Badgley of the campus police. He repeated Fitzpatrick's instructions that no one was permitted to enter the corridor unless they had an interview appointment with one of the recruiters. Defendant Royal was directly in front of Badgley at this time. After making this announcement, Badgley stepped back in line with the other two men.

The crowd continued forward, entering the corridor. Badgley and the other two men acted together in an attempt to stop the students. They were pushed down the corridor toward the interview rooms.

At one point during the shoving match, one of the men flanking Badgley attempted to place one of the students under arrest. He announced his purpose by saying, "You are under arrest." Defendant Royal was standing a few feet away when this statement was made.

Minutes later and farther down the corridor, the man on the other side of Badgley attempted to arrest yet another student. He also made his purpose known by saying, "You are under arrest." Defendant Royal then grabbed the man and began pulling him away from the student, saying, "Get your hands off her." The man, identified at trial as Officer Dunlap of the Department of Public Safety, warned Royal, "Get your hands off me, Royal, you are obstructing an arrest." After Dunlap released his hands from the student, Royal let go of Dunlap. Royal was arrested and taken into custody a few hours later after the demonstration had ended.

It is important to note that there were no uniformed police officers visible anywhere in the building during this incident. The only officers present were dressed in plain clothes, without badges or other identifying emblems. Their garb was similar to that of the civilian university officials who were monitoring the event. Moreover, the man who defendant is charged with obstructing admitted that he never identified himself as a police officer.

In order to be found guilty of the charged offense, it must be shown that Royal actually knew that he was interfering with an authorized police officer in the exercise of his official duty. While it is true that Lieutenant Badgley identified himself as a police officer and stationed himself in close proximity to the other two men, it is also true that

Badgley did not identify his companions as police officers, and that Badgley was working closely with Mr. Fitzpatrick, a similarly dressed civilian. Badgley's two companions never identified themselves as police officers. Moreover, it was clear to all that not everyone in the building was a police officer.

Royal could not be expected to guess at the identity of the men blocking his path. He cannot be punished for wrongly assuming that he was confronting a university official, like Mr. Fitzpatrick, when he grabbed a man who turned out to be a police officer.

That Officer Dunlap used the word "arrest" cannot be said to have informed Royal that Dunlap was a police officer. Royal could easily have believed that Dunlap was a civilian university employee, assisting in the effort to blockade the hallway and using the term "arrest" to discourage Royal and his entourage from proceeding further.

We conclude that the evidence introduced by the prosecutor was insufficient to justify a reasonable man in finding Royal guilty beyond a reasonable doubt. Compare *People v Chesbro,* 300 Mich 720; 2 NW2d 895 (1942). In so doing, we neither condone Royal's behavior nor endorse his politics. Nor do we suggest that he should be absolved of all criminal responsibility for his actions; he may well have committed other crimes. We are convinced, however, that the prosecutor failed to prove him guilty of the specific offense charged in the information. That charge requires proof that Royal knowingly obstructed a police officer in the exercise of his duty. While we recognize that knowledge can be inferred from circumstantial evidence, *People v Tantenella,* 212 Mich 614; 180 NW 474 (1920), in this case it is as reasonable to infer that Royal honestly thought that Dunlap was a university

official as it is to infer that Royal knew that Dunlap was a police officer. That leaves, necessarily, a reasonable doubt as to Royal's knowledge. Accordingly, Royal was entitled to a directed verdict of acquittal.

Reversed. Defendant ordered discharged from probation and reimbursed in the amount of all costs previously paid.