PEOPLE v JACKSON

PEOPLE v TOLLIVER

Docket No. 46257. Submitted March 5, 1980, at Detroit.—Decided September 15, 1980.

Defendants, Andrew Jackson and Michael Tolliver, were convicted of first-degree felony murder, armed robbery, and possession of a firearm in the commission of a felony in Recorder's Court of Detroit, Geraldine B. Ford, J. On appeal, defendants contend that the jury which convicted them was never properly sworn, that there is nothing in the transcribed record showing that the jury was properly sworn, and that this entitles them to a remand for an evidentiary hearing to establish the accuracy of the court clerk's notes which indicate that the jury was sworn. Defendants also contend that the trial court erred by excusing a juror who knew the deceased and the deceased's sister before the jury was sworn but after it had been selected. They also question whether the trial court adequately instructed the jury that, in order to convict the defendants of felony murder, the killing must be attributable to the defendants and not to the robbery victim. They challenge the adequacy of the trial court's instruction relative to circumstantial

REFERENCES FOR POINTS IN HEADNOTES

[1] 15A Am Jur 2d, Clerks of Court § 24.
47 Am Jur 2d, Jury § 345.
[2] 47 Am Jur 2d, Jury §§ 213, 215.
[3] 5 Am Jur 2d, Appeal and Error § 891.
75 Am Jur 2d, Trial § 906.
[4] 75 Am Jur 2d, Trial §§ 843-853.
[5] 21 Am Jur 2d, Criminal Law §§ 182, 189.
40 Am Jur 2d, Homicide § 190.
Application of felony murder doctrine where the felony relied upon is an includable offense with the homicide. 40 ALR3d 1341.
[6] 5 Am Jur 2d, Appeal and Error § 772.
76 Am Jur 2d, Trial § 1080.
[7] 76 Am Jur 2d, Trial § 1080.
[8] 21 Am Jur 2d, Criminal Law §§ 86, 87.
40 Am Jur 2d, Homicide § 72.
75 Am Jur 2d, Trial § 719.

evidence. They also claim that their convictions for both felony murder and the underlying felony of armed robbery violate the double jeopardy protections of both the United States and Michigan Constitutions. They predicate reversible error upon the failure of the trial court to grant a mistrial or a severance following the cross-examination testimony of defendant Tolliver wherein he recanted his previous version of the events surrounding the crime as related by him on direct examination. Finally, defendants urge that the trial court committed reversible error in its instructions to the jury on the element of malice in felony murder. *Held:*

1. Although the trial transcript does not indicate that the jury was ever sworn, the court clerk's notes, which are an official part of the lower court file and part of the record on appeal, clearly show that the jury was properly sworn.

2. The prosecutor moved to excuse a particular juror after it was learned that she knew the deceased and the deceased's sister even though the juror indicated that she would not feel uncomfortable sitting on the jury. The motion of the prosecutor to excuse the juror may be viewed as a delayed challenge for cause. Although the court rules do not expressly include fellow workers of immediate relatives of the parties within the class of persons who may be challenged for cause, an extension of the rule to include those so situated is plainly within the spirit of the rule. The trial court's action did not operate to deny defendants a trial by a fair and impartial jury of their peers. The court acted with proper circumspection and the decision to excuse the juror did not constitute an abuse of discretion.

3. The jury instructions adequately informed the jury that before they could convict the defendants of felony murder they must find that the killing was attributable to the defendants and not to the robbery victim. The fact that the court followed this instruction with an instruction on transferred intent did not serve to so confuse the jury as to constitute reversible error.

4. Defendants' contention that the court failed to inform the jury that the prosecutor bore the burden of negating all possible innocent theories, and that, as a result, the court failed to adequately instruct the jury on the question of circumstantial evidence, is not accurate. No objection was made to the instructions as given and a trial court is not required to give, *sua sponte,* such an instruction on circumstantial evidence. The instruction given did not misstate the law.

5. The defendants are correct in claiming that their convictions for both felony murder and the underlying felony of

armed robbery violate the double jeopardy protections of both the United States and Michigan Constitutions. The conviction and sentences for armed robbery are vacated.

6. The trial court denied a timely motion by counsel for defendant Jackson for a mistrial in order that a severance might be granted and separate trials conducted. Counsel for defendant Tolliver moved for a dismissal on grounds that Tolliver was incompetent to stand trial. This motion was also denied. Both motions were made and denied after Tolliver, on cross-examination, recanted his earlier testimony and attempted to exculpate himself by incriminating Jackson. Tolliver did not suffer any prejudice to any substantial rights he has from the holding of the joint trial. The claim that Tolliver was incompetent to stand trial was not timely made and not supported by any offer of proof. There was no reversible error in the court's denial of counsel's motion on behalf of Tolliver. The trial court's refusal to grant defendant Jackson's motion for a mistrial, however, constituted an abuse of discretion since Jackson did suffer prejudice to substantial rights of his by the cross-examination testimony of Tolliver. This abuse of discretion by the trial court requires a reversal of Jackson's conviction and a remand for a new trial.

7. The trial court's instruction to the jury that both defendants could be found guilty of felony murder if either was found to have acted with malice is not reversible error. Malice necessary for murder may be implied from the perpetration of the initial felony.

Reversed and a new trial granted for defendant Jackson. Affirmed in part, reversed and vacated in part for defendant Tolliver.

R. M. MAHER, J., concurred but clarified his position in respect to the trial court's jury instructions on the element of malice in felony murder. He subscribes to the rule that the malice necessary for first-degree murder cannot be imputed from a defendant's intent to commit the underlying felony. Despite this difference in views between himself and the majority, he felt that the instructions in the instant case were sufficient to satisfy the requirements of a jury instruction under either rule.

## OPINION OF THE COURT

1. APPEAL — LOWER COURT RECORD — DETROIT RECORDER'S COURT —
   COURT CLERK — WORK SHEET — COURT RULES.

A work sheet for the clerk of the Recorder's Court of Detroit is an

official part of the lower court record, part of the record on appeal, and a proper source to show that a jury had been sworn (GCR 1963, 812.1[a]).

2. HOMICIDE — JURY SELECTION — CHALLENGES — COURT RULES.
A motion by a prosecutor in a homicide trial to excuse a juror because of the juror's acquaintance with the deceased and the deceased's sister made after the panel was selected but before it was sworn may properly be viewed as a delayed challenge for cause and is within the spirit of the court rule regarding challenges for cause; a court's decision to exclude the juror did not constitute an abuse of discretion where it did not operate to deny the defendant a fair trial (GCR 1963, 511.4[10]).

3. APPEAL — PRESERVING ISSUES — JURY INSTRUCTIONS — MISCARRIAGE OF JUSTICE.
A defendant's failure to object to the jury instructions at trial precludes appellate review of such instructions, except where a miscarriage of justice would otherwise result.

4. CRIMINAL LAW — TRIAL — JURY INSTRUCTIONS — CIRCUMSTANTIAL EVIDENCE.
A trial judge has no duty to *sua sponte* instruct the jury that when a case is based on circumstantial evidence the state must refute every theory consistent with innocence; such an instruction does not accurately reflect the state of the law in Michigan.

5. CRIMINAL LAW — CONSTITUTIONAL LAW — DOUBLE JEOPARDY.
The double jeopardy protections of both the United States and Michigan Constitutions are violated by convicting a defendant of both felony murder and the underlying felony.

6. APPEAL — MOTIONS AND ORDERS — MOTION FOR MISTRIAL — DENIAL OF MOTION — PREJUDICE.
The declaration of a mistrial in a criminal case rests in the sound discretion of the trial court and a denial of a motion for mistrial will not be reversed by the Court of Appeals absent an affirmative showing of prejudice to the rights of the accused.

7. TRIAL — MOTIONS AND ORDERS — MOTION FOR MISTRIAL — DENIAL OF MOTION — DISCRETION — ABUSE OF DISCRETION.
A trial court abuses its discretion by denying a motion for mistrial whenever "manifest necessity" requires the premature termination of the trial; "manifest necessity" exists whenever an error cannot be dealt with by a less drastic remedy, *i.e.,* where no reasonable alternative exists.

8. Criminal Law — Felony Murder — Malice — Instructions to Jury.

   *The law in Michigan is unsettled as to whether the malice necessary for first-degree felony murder can be imputed from a defendant's intent to commit the underlying felony; however, it is possible for a single jury instruction to adequately satisfy the requirements of both views on the matter.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Dianne Odrobina,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for Andrew Jackson.

*Gerald M. Lorence, P.C.,* for Michael Tolliver.

Before: D. E. Holbrook, Jr., P.J., and R. M. Maher and Cynar, JJ.

Cynar, J. Following a joint trial by jury, defendants were convicted of first-degree felony murder, MCL 750.316; MSA 28.548, armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). The trial court sentenced both defendants to concurrent terms of life imprisonment on the felony murder and armed robbery counts, and to the mandatory two-year consecutive sentences for the felony-firearm convictions. Defendants appeal as of right.

I

In the early evening hours of February 12, 1978, the victim, Ruby Tolliver Grant, was visiting at the home of Hosea Nicholes in the City of Detroit.

The two had known each other for approximately seven years. Defendant Jackson, who resided with the deceased, arrived at Nicholes's home and was let in. Shortly thereafter, the victim, Jackson and the other guests present left. The decedent returned alone some 20 to 30 minutes later.

Around 9 p.m., a young girl, Tina Lattner, knocked on Nicholes's front door. She had been visiting a friend who lived next door, and, while waiting for a bus in which to return home, she went to Nicholes's home to use the bathroom. After she left the house, Hosea locked the front door. Returning to the bus stop, Tina was approached by two men who asked her who was in the house. She identified one of the men as defendant Tolliver. Tina informed them that Nicholes and "this other lady" were inside. The men approached the home, whereupon Tina saw the victim appear at the door and unlock the screen door. The other man present with Tolliver was carrying a gun alongside his leg.

Inside, the victim had asked Nicholes for some water. He left the living room to get a glass of water for her and when he returned defendant Jackson met him at the front door holding a pistol aimed right between his eyes. Outside, Tina Lattner saw the same event from a different perspective. She then got scared and left the vicinity for approximately ten minutes before returning.

Jackson ordered Nicholes to turn around, and, when Hosea attempted to resist, Jackson hit him "upside the head" with his pistol. Next, Nicholes's wallet was taken from him. When he tried a second time to turn around, he was again struck on the temple with the gun, at which time he lost consciousness.

A next door neighbor, Walter Jones, had been at

Nicholes's home earlier in the evening when defendant Jackson had arrived the first time. He returned later that night to find the victim lying face down on the floor of the living room. So too, when Tina Lattner later returned to the bus stop in front of the Nicholes residence, she saw the deceased lying on the floor. Hosea Nicholes regained consciousness when he heard someone knocking on his front door, and at that time he found the deceased lying on the floor.

A uniformed officer, Roscoe Mayfield, went to the home of one Queen Houser in response to a radio message about "a man shot". Upon arriving at that location, approximately one block from Nicholes's house, he observed defendant Tolliver with a gunshot wound in his leg. He then went to Nicholes's home and saw the decedent lying on the floor. When Tolliver attempted to leave, officer Mayfield placed him under arrest.

Another officer, John Gallager, was the first to arrive at Nicholes's house. He observed Nicholes in a "stunned" state and saw the deceased lying on the floor. He noted several spent and live cartridges about the place.

Defendant Tolliver testified at trial regarding the events of that evening. He stated that, while returning from a nearby store, he decided to stop at his mother's (the victim's) house before going home. His mother was not there, but defendant Jackson was. The two decided to proceed to Hosea Nicholes's house. Upon arriving, they were admitted by the deceased. Jackson immediately pulled a gun which Tolliver said was the decedent's. Tolliver attempted to take the gun from Jackson, and, in the struggle, was shot in the right leg. Next, he saw Nicholes grab a gun, at which time he hopped out of the house hollering for his mother to follow him. He then heard Nicholes start shooting.

On cross-examination, inconsistencies in this story were elicited. Tolliver stated that Jackson pulled the gun before entering the house, pushed him inside, physically attacked Nicholes, and shot him (Tolliver) as he attempted to escort his mother outside.

Defendant Jackson also testified in his own behalf. He stated that he lived in the same house with the deceased, Ruby Tolliver Grant. He confirmed that he had visited Nicholes's residence sometime during the late afternoon of February 12. He escorted the deceased home from Nicholes's place and then back again a short time later. He then left and went to purchase cigarettes. Returning from the store, he met Tolliver, who asked him where his mother was. Informing Tolliver of his mother's whereabouts, the two proceeded to Nicholes's home. Upon knocking on the door, Jackson said that he heard Hosea's voice stating "nobody opens my God damn [sic] door but me". Nicholes then appeared with a rifle and exchanged words with the victim with regard to her opening the door for the defendants. Jackson said that the victim asked him for her gun, which Jackson had earlier picked up and kept in his possession. Next, according to Jackson, Hosea Nicholes opened fire with the rifle. Then he (Jackson) struck Nicholes across the head with the deceased's revolver. He testified that he saw Hosea Nicholes shoot the deceased.

## II

Defendants initially contend that the jury which convicted them was never properly sworn, as any notation to that effect is missing from the transcribed record. The only indication that the jury

was sworn is found in the notes taken by the clerk of the court. As such, defendants claim entitlement to a remand for an evidentiary hearing wherein the accuracy of those notes would have to be established. We disagree.

Defendants' contention is answered by *People v Livingston,* 57 Mich App 726; 226 NW2d 704 (1975), *modified on other grounds* 396 Mich 818; 238 NW2d 360 (1976), where this Court stated:

"Defendant also maintains that the jury which convicted him was never properly sworn. Though the transcript does not indicate that the jury was ever sworn, the work sheet for the clerk of the Recorder's Court dated May 22, 1973, an official part of the lower court file, states that the jury was indeed sworn on that date. That entry is part of the record on appeal. GCR 1963, 812.1(a). The record therefore clearly demonstrates that the jury was properly sworn, and defendant's contention to the contrary is without merit." *Id.,* 734.

We find this case sufficiently on point to control defendants' contention of error.

### III

Next, defendants complain that the trial court reversibly erred by excusing a juror who was discovered to have known the deceased and the deceased's sister as a result of the juror's employment. The record indicates that the juror was dismissed before the jury had been sworn but after it had been selected. The juror indicated that she would not feel uncomfortable sitting on the jury, and defense counsel expressed no objection to the juror remaining on the panel. However, upon the prosecutor's registering his objection, the trial court excused the juror.

The motion of the prosecutor to excuse the juror

may be viewed as a delayed challenge for cause
under GCR 1963, 511.4. Analyzing it as such, we
conclude that the challenge was properly made
under GCR 511.4(10).[1] Although it does not ex-
pressly include fellow workers of immediate rela-
tives of the parties within its ambit, an extension
of the rule to include those so situated is plainly
within the spirit of the rule. Moreover, as noted by
the authors of Michigan Court Rules Annotated,
the enumerated grounds in GCR 511.4 presumably
were not intended to be exhaustive, but were
merely a codification of prior case law. 2 Honig-
man & Hawkins, Michigan Court Rules Annotated
(2d ed), p 466. The trial judge's action did not
operate to deny defendants a trial by a fair and
impartial jury of their peers. We conclude that the
trial judge acted with proper circumspection and
that his decision to excuse the juror did not consti-
tute an abuse of discretion. *Cf., People v Gerald
Hughes,* 85 Mich App 8, 16-18; 270 NW2d 692
(1978).

## IV

Defendants also question whether the trial court
adequately instructed the jury that, in order to
convict defendants of felony murder, the killing
must be attributable to the defendants and could
not have been committed by the robbery victim.

---

[1] GCR 1963, 511.4 reads in relevant part:

".4 Challenges for Cause. After the examination of prospective
jurors is completed and before any juror is sworn, the parties may
challenge any juror for cause. Every challenge for cause shall be
determined by the court. A juror challenged for cause may be directed
to answer every question pertinent to the inquiry. The following are
grounds for challenges for cause:

* * *

"(10) that the person is the guardian, ward, landlord, tenant,
employer, employee, partner, client, or member of the family of a
party or attorney".

We find that the instructions, reviewed in their entirety, did adequately inform the jury that before they could convict defendant(s) of felony murder they must find that the killing was attributable to the defendant(s), not the victim, in accord with the rule found in *People v Carter,* 387 Mich 397, 422; 197 NW2d 57 (1972). The fact that the court followed this instruction with an instruction on transferred intent did not serve to so confuse the jury or otherwise obfuscate the questions which they were to decide so as to constitute reversible error. Criminal intent is distinct from the criminal act and the attribution of that act to a particular agency. The intent instruction served to inform the jury that, while they must attribute the *actus reus* to defendants, they need not find that defendants actually intended to kill the deceased, as long as they possessed the requisite intent to kill someone.

## V

Defendants further challenge the instruction given by the trial court relative to circumstantial evidence, again claiming inadequacy in the instruction as given. It must be noted that both direct and circumstantial evidence was presented in the instant case. Defendants' specific contention is that the court failed to inform the jury that the prosecutor bore the burden of negating all possible innocent theories. No objection was made to the instructions as given.[2]

---

[2] The complained of instruction was as follows:

"Now, there are two types of evidence from which you may properly find a defendant guilty of an offense. One type is described in the law as direct evidence. That is the testimony of a witness who would say to you from the witness stand I saw a particular thing happen, and who would tell you what he or she saw; or the person who might say from the witness stand I heard a particular thing, and who would say to you what he or she heard.

Defendants' argument misses the mark. Even assuming, *solely* for purposes of argument, that the instruction they contend should have been given accurately reflects the state of the law in this jurisdiction, the trial court is not required to *sua sponte* give such an instruction on circumstantial evidence. *People v Haney,* 86 Mich App 311, 318; 272 NW2d 640 (1978). No request was made to give the omitted instruction and the instruction given the jury did not misstate the law. Therefore, we fail to discern any reversible error on this ground.

## VI

We next address defendants' claim that their convictions for both felony murder and the underlying felony of armed robbery are violative of double jeopardy protections of both the United States and Michigan Constitutions.[3] We agree. As stated by this Court in *People v Anderson,* 62 Mich App 475, 482; 233 NW2d 620 (1975), *remanded on other grounds,* 406 Mich 987 (1979):[4]

"To punish defendant both for the greater offense, that is, first-degree (felony) murder, and for the included offense, which would be in this case armed robbery, would constitute double punishment in viola-

---

"The other kind of evidence is described in the law as circumstantial evidence, the proof of a chain of circumstances pointing to the commission of an offense.

"As a general rule, the law makes no distinction between direct and circumstantal evidence, but requires that before convicting a defendant, that the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all of the evidence in the case."

[3] US Const, Am V; Const 1963, art 1, § 15.

[4] We are cognizant of the fact that our Supreme Court granted the people's delayed application for leave to appeal in *People v Wilder,* 82 Mich App 358; 266 NW2d 847 (1978), for consideration of this precise question. See 403 Mich 816 (1978).

tion of the double jeopardy clauses of the United States Constitution and the Michigan Constitution."

The appropriate remedy is to vacate defendants' convictions and sentences for armed robbery. *People v Newsome,* 84 Mich App 758, 761; 270 NW2d 685 (1978), *lv den* 404 Mich 801 (1978).

## VII

Defendants also predicate reversible error upon the failure of the trial court to grant a mistrial or a severance following the cross-examination testimony of defendant Tolliver, wherein he recanted his previous version of the events surrounding the crime, as related by him on direct examination and recited hereinbefore, and accused defendant Jackson of forcing him into the complainant's home, physically attacking the complainant, pointing a weapon at him (Tolliver) and at the deceased, and shooting defendant Tolliver in the leg.

Counsel for defendant Jackson timely made a motion for a mistrial in order that a severance could be granted and separate trials conducted. Counsel for defendant Tolliver moved for a dismissal, expressing grave concerns about his client's competency to stand trial. The motions were denied by the trial court.

We are unpersuaded by these contentions as they pertain to defendant Tolliver. We do not find that he suffered any prejudice to substantial rights of his from the holding of a joint trial. *People v Carroll,* 396 Mich 408, 414; 240 NW2d 722 (1976), *People v Clark,* 85 Mich App 96, 101; 270 NW2d 717 (1978), *inter alia.* Defendant's change in testimony inured to his own benefit, as his later version of events was self-serving and exculpatory, while tending to incriminate his codefendant. Any

claim regarding his competence to stand trial was not supported by an offer of proof nor was it timely raised under the relevant court rule as in effect on the date of trial. See GCR 1963, 786, as in effect on May 10, 1978. Thus, no reversible error occurred in this regard with respect to defendant Tolliver.

We next address the claims of defendant Jackson surrounding the denial of his motion for a mistrial. The rule in this jurisdiction is that, in the absence of an affirmative showing of prejudice to the rights of the accused, a denial of a motion for mistrial will not be reversed on appeal. *People v Moran,* 36 Mich App 730; 194 NW2d 555 (1971), *People v Qualls,* 9 Mich App 689; 158 NW2d 60 (1968), *lv den* 381 Mich 763 (1968), *cert den* 393 US 960; 89 S Ct 397; 21 L Ed 2d 374 (1968). The declaration of a mistrial in a criminal case rests in the sound discretion of the trial judge. *Qualls, supra,* 693. In essence, whether defendant Jackson's motion is characterized as one seeking a severance or for a declaration of a mistrial, reversal would be mandated only upon a finding of actual prejudice to substantial rights of the accused, such that the denial of defendant's motion constituted an abuse of discretion on the part of the trial court. So too, regardless of how the motion is characterized, the same nucleus of facts would be proffered in support of the predication of error in its denial.

The question then reduces to whether "manifest necessity" was present, *i.e.,* whether there was a legal necessity requiring the premature termination of the trial, at least as to defendant Jackson. See *People v Alvin Johnson,* 396 Mich 424, 431-438; 240 NW2d 729 (1976), *People v Benton,* 402 Mich 47, 54-65; 260 NW2d 77 (1977) (opinion of

LEVIN, J.). Manifest necessity does not exist where the error could have been dealt with by a less drastic remedy, *i.e.,* where a reasonable alternative existed. *People v Stevens,* 91 Mich App 422, 428; 283 NW2d 763 (1979), *Alvin Johnson, supra,* 437-438, *Benton, supra,* 60-61.

We conclude that manifest necessity was present here, that there was a legal necessity requiring the termination of this trial only with respect to defendant Jackson. Defendant Jackson's claim that a severance was necessitated as a result of defendant Tolliver's accusatory testimony was clearly valid. Defendant Tolliver attempted to place the entire responsibility for the crimes in question on defendant Jackson, while at the same time seeking to exculpate himself to avoid punishment. This situation fits squarely under the holding of *People v Hurst,* 396 Mich 1, 6-8; 238 NW2d 6 (1976). Regardless of how it is characterized, the facts here necessitated the termination of trial with respect to defendant Jackson. Counsel for defendant Jackson noted at the time he made his motion for a mistrial that he was unable to discover the possibility of antagonistic defenses at any previous point in time because both defendants were reticent to discuss the details of the criminal transaction with either defense counsel. Thus, he was not on notice of any potential antagonism prior to trial, at a point where a motion for a severance would normally be made, and cannot be said to have lacked diligence in this regard. Nor would defendant Jackson's refusal to discuss the case with counsel vitiate his claim, as discovery of any potential antagonism would initially require a dialogue with defendant Tolliver, not with defendant Jackson. Finally, as *Hurst* makes clear, the degree of prejudice to a defendant arising in this

context is so great that a fair trial is impossible. Thus, a remedy less drastic than a declaration of a mistrial would not have sufficed to insure defendant Jackson a fair trial. Accordingly, we find that the trial judge's refusal to grant defendant Jackson's motion for a mistrial constituted an abuse of discretion, requiring reversal of his convictions and a remand for a new trial.

## VIII

Finally, defendants ask us to find reversible error in the trial court's instructions on the element of malice in felony murder. The trial court instructed the jury that they could find both defendants guilty of felony murder if they found that either of them acted with malice. We reject defendants' claims.

Under *People v Till,* 80 Mich App 16; 263 NW2d 586 (1977), we find no reversible error in the trial court's instructions.

## IX

In sum, we conclude that the convictions of defendant Jackson must be reversed and the defendant granted a new trial. Defendant Tolliver's convictions for felony murder and felony-firearm and their attendant sentences are affirmed, while his conviction for armed robbery is reversed and the sentence imposed thereon vacated.

D. E. HOLBROOK, JR., J., concurred.

R. M. MAHER, J. *(concurring).* While I would concur with all other positions of the majority opinion, I must clarify my position with respect to the trial court's jury instructions on the element

of malice in felony murder. A portion of the disputed instruction provides as follows:

"The People must also prove that the defendants, or either of them, knowingly and intentionally performed the act—that is shooting a gun—which caused the death of Ruby Grant. That is that the defendants or either of them knowingly created a high risk of death to the deceased knowing that his act was reckless and wrongful and that it would probably cause death. For murder of the first degree, the People must prove the elements of murder of the second degree, which I have just defined for you. And in addition, the People must prove that at the time of the act which caused the death of Ruby Tolliver Grant, that the defendants or either of them were committing or attempting to commit robbery armed. And that one defendant was attempting to commit or committing robbery armed and the other was helping him to commit the robbery armed."

While I follow the rule in *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976), which states that the malice for first-degree murder cannot be imputed from defendant's intent to commit the underlying felony, I would find the instructions in the instant case were sufficient to satisfy the requirement in *Fountain.*